The Estate of R. W. Lashells, Marie J. Lashells, Executrix v. Commissioner.
Estate of R. W. Lashells, Lashells v. Commissioner
Docket No. 29537.
United States Tax Court
1952 Tax Ct. Memo LEXIS 280; 11 T.C.M. (CCH) 274; T.C.M. (RIA) 52086; March 28, 1952
Charles W. Steadman, Esq., for the petitioner. Cyrus A. Neuman, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in the income and victory tax of R. W. Lashells, deceased, for the year 1943, deficiencies in income tax for the years 1944, 1945 and 1946, and additions to tax for fraud, as follows: Addition
Year
Deficiency
to tax
1943
$ 6,575.58 income and victory
tax
$ 4,008.37
1944
17,271.26 income tax
10,349.44
1945
37,924.20 income tax
21,961.11
1946
8,188.31 income tax
The issues are: (1) Did the Commissioner err in determining that Marie J. Lashells, wife of the decedent, was not a bona fide partner in the Bearing and Transmission Company during the years 1943 *281 to 1946, inclusive, and that, therefore, the decedent is taxable upon the entire net income of this company for those years? (2) Did the Commissioner err in determining that Marie J. Lashells was not a bona fide partner in the Ohio Conveyor Company in the years 1945 and 1946? (3) Did the Commissioner err in determining that the decedent understated his income for 1943 in the amount of $262, for 1944 in the amount of $3,150.65, and for 1945 in the amount of $29,625.19? (4) Did the Commissioner err in determining a 50 per cent addition to tax for fraud against the decedent for the years 1943 through 1945, inclusive? Findings of Fact Ralph W. Lashells (hereinafter referred to as Ralph) and Marie J. Lashells (hereinafter referred to as Marie) were married on September 7, 1921, at Youngstown, Ohio, and they continued to live together as husband and wife until the death of Ralph W. Lashells on August 31, 1949. During the period 1921 to 1940, Ralph was gainfully employed and supported his family on his salary. Prior to 1935, he was a branch manager of the Ohio Ball Bearing Company in Youngstown. In 1935 he moved to Toledo where he was branch manager of a new store of the Ohio *282 Ball Bearing Company. From 1938 to October 1940, he was employed by the Ohio Belting Company in Toledo. On October 18, 1940, the Lashells family moved to Findlay, Ohio, where Ralph organized the Bearing and Transmission Company to engage in the sale of mechanical equipment such as gears, motors, sprockets, sheaves, chains, belts, etc. The Bearing and Transmission Company (hereinafter referred to as the company) was originally located in a storeroom at 211 North Main Street, Findlay, Ohio. The storeroom was approximately 100 to 150 feet deep and it served as a place for the maintenance of inventory as well as providing office space for the business. Originally it did not contain a counter, but later a counter was placed in the front of the room. The original capital contribution provided for the formation of the company was $600between and $800. This amount represented money saved out of the earnings of Ralph which had, during the marriage, been kept in a joint account in various banks. All of the work entailed in the organization and setting up of the company, during the first few months of its life, was performed by members of the Lashells family including Ralph and Marie, *283 and two of their children, Marguerite Lashells, then age 18, and Ted Lashells, then age 15. Ted and Marguerite were of school age and able to work only part time, but Ralph and Marie devoted full time to the business. Throughout 1941, the business continued to operate on the capital originally contributed. During this period Ralph spent the major portion of his time traveling in an effort to develop contacts and build the company's sales. Marie meanwhile worked regularly from 8 A.M. to 5 P.M. in the store, assisted on a part-time basis by her children. She also worked frequently in the evenings. During the latter part of 1941, the business of the company expanded rapidly. It needed additional capital to increase its inventory and Ralph made an unsuccessful effort to borrow money using his Government insurance as collateral. His wife, Marie, had funds of her own representing savings accumulated from her earnings before marriage. At the time of her marriage these savings amounted to approximately $2,500, and thereafter she kept them separate from monies earned by her husband. They were never deposited in a bank but were always kept in a box around the house in the form of cash. During *284 the period 1921 to 1941 she spent a part of these savings and once or twice loaned her husband small sums which he repaid, but her savings never dropped below $1,800 during these years. Ralph asked her if she would be willing to invest a part of her money in the company, and she said that she would. At the suggestion of Scott Elsea, an accountant who kept the books of the company at that time, it was decided that the business would be organized as a partnership. The accountant prepared a partnership agreement, which was dated December 31, 1941, and executed shortly thereafter by Ralph and Marie. The agreement recited a contribution of $1,500 by Marie, and provided that the parties were to share equally in all profits and losses of the business, that the management should rest in the hands of Ralph, and that he should consult with Marie on policies of major importance. From the date of the execution of the partnership agreement until the death of Ralph, the books of the company reflected separate partner's accounts for Marie and Ralph. Neither partner was paid any salary but each had a drawing account. Both Marie and Ralph were empowered to write checks on the partnership bank account *285 although most of the checks except for those covering Federal income tax liability were signed by Ralph. The bank account was kept at the Ohio Bank and Savings Company in Findlay, Ohio, and was in the name of the Bearing and Transmission Company. Shortly after December 31, 1941, the banks in Findlay were informed that the company was being operated as a partnership and so recognized the organization. In addition, Ralph and Marie held themselves out to the public and their business associates as partners, signed agreements as such, filled out various state and Federal form and reports as partners, and, on occasion, received mail addressed to Ralph W. and Marie J. Lashells doing business as Bearing and Transmission Company. After the execution of the partnership agreement and for the first three months of 1942, Marie continued to work full time at the store performing substantially the same duties that she had previously performed. Thereafter, in 1942, the business of the company was such that it was able to hire two girls to work full time at the store in addition to several salesmen who divided their time between the store and selling on the road. At that time Marie ceased working *286 during the daytime. During the period 1942 through 1946, Ralph continued to travel a great deal of the time, averaging twelve to fourteen days a month on the road. He also interested himself in a number of civic and charitable projects in the City of Findlay. He frequently went to the office at night and on Sundays accompanied by Marie. These visits averaged two or three evenings per week in addition to occasional Sundays. During these visits they would study the possibilities of adding new lines and discontinuing old lines, check the inventory, pay bills, check the books, analyze accounts receivable and accounts payable, and discuss company policies and matters pertaining to the operation of the business. From the time of its organization, the business of the company expanded steadily and rapidly. By 1944 additional space was needed to handle the increased inventory, and Ralph and Marie discussed this problem and finally decided to purchase the premises at 400 Walnut Street, Findlay, Ohio, as a location for the business. Both were present when the deal for this property was closed and the deed to the property was made out to them jointly. Immediately after the death of Ralph in *287 August 1949, Marie took over complete charge of the operation of the company and has continued to manage and supervise all aspects of the business. Since Ralph's death, Marie has worked regular daily hours in the office of the company. Ralph and Marie Lashells intended in good faith and acting with a business purpose to join together in the conduct of the business of the company as equal partners from the time the agreement of December 31, 1941, was executed to and including the taxable years 1943-1946, inclusive. On January 1, 1945, Ralph Lashells and R. A. Snyder formed a partnership to engage in business under the name of Ohio Conveyor Company. Each had an equal interest in the partnership. Marie Lashells never performed any services for the Ohio Conveyor Company. The books of the Bearing and Transmission Company record an investment of $4,150.67 of its funds in the Ohio Conveyor Company and this investment was charged therein to the personal accounts of Ralph and Marie in equal amounts. In the individual income tax returns of Ralph and Marie for the years 1945 and 1946, they each reported the following amounts as their distributive shares of the income of the Ohio Conveyor *288 Company: Ralph
Marie
1945
$2,040.09
$2,040.08
1946
1,517.71
1,517.72
Marie was not in fact a partner in the Ohio Conveyor Company during these years, and the partnership income reported by Ralph must be increased by the amounts of $2,040.08 for 1945 and $1,517.72 for 1946. Ralph was 46 years old in 1943. His education had consisted of high school, parttime college, night school, correspondence courses, and four to five years in a company school at Youngstown, Ohio. He was a prominent citizen of Findlay, and was active in the Findlay Chamber of Commerce, Lions Club, Elk's Club and other organizations. In October 1940, Ralph opened a business bank account, referred to above, in the name of the Bearing and Transmission Company at the Ohio Bank and Savings Company in Findlay. In 1941 he opened an individual account in his own name at the same bank, which was changed to a joint account upon which both he and Marie could draw, on February 18, 1942; this account will be referred to hereinafter as the joint personal account. In 1945, he opened a third account in the name of the Bearing and Transmission Company at the First National Bank, Findlay, Ohio. *289 In general, the Bearing and Transmission Company realized income from three sources: (1) sales of material directly from inventory maintained by it; (2) sales of material in which shipment was made directly from the factory to the customer who was billed therefor by the company; and (3) sales negotiated by the company in which the manufacturer shipped the material direct and billed the customer therefor and the company received a commission as manufacturer's agent. Receipts from the first two categories of sales were deposited in the business account of the company at the Ohio Bank and Savings Company. However, the commissions, growing out of the third category of sales, were deposited in the joint personal account at the same bank during 1943 and 1944, and in both the joint personal account and the account at the First National Bank in 1945. Prior to 1942 the bookkeeping of the company was handled by Scott Elsea, a young, independent accountant with limited experience, who came to the company office once a month. He made entries in the cash receipts and disbursements journals and postings to a general ledger. He used the duplicate deposit slips and check stubs of the business *290 account at the Ohio Bank and Savings Company in determining the amounts to enter as cash receipts and disbursements. In 1942 Ralph hired Marilyn Swisher, who was then unmarried and known as Marilyn Smith. She worked in the office and handled the bookkeeping until 1944. Subsequent to 1944 she divided the bookkeeping duties with a Miss Deter. All original entries to the cash receipts journal and the sales journal were made by these girls from checks handed to them or placed on their desks. Elsea continued to come to the office periodically and make postings from the cash receipts journal and sales journal to the general ledger. He verified the entries by checking them against the deposit slips of the business account at the Ohio Bank and Savings Company. He never saw any duplicate deposit slips of the joint personal account in the Ohio Bank and Savings Company or of the account in the First National Bank. In 1941 a few entries appeared in the general ledger under a "commissions income account". No further entries appeared in that account until July, 1946. From 1942 to July, 1946, it was Ralph's practice to withhold from the office girls all commission checks and other checks representing *291 receipts which did not arise from sales made in the regular course of business. Although Marilyn Swisher, and perhaps others in the office, knew that the company was receiving such checks, they were never recorded on the books of the company because such checks never came before her or Miss Deter in the regular course of their duties. Ralph did a considerable amount of traveling, but he was rarely away from the office for more than one day. The commissions received by the Bearing and Transmission Company were primarily from Fairfield Engineering Co., Rapids-Standard Co., and Towmotor Corporation. During the years 1943, 1944, and 1945, it received the following commissions: 1943
1944
1945
Fairfield Engi-
neering Co.
$9,082.59
$11,281.68
$ 9,860.69
Rapids-
Standard Co.
85.60
1,086.43
1,210.12
Towmotor
Corporation
3,307.43
13,025.62
$9,168.19
$15,675.54
$24,096.43
The foregoing commissions were not recorded on its books, nor were they deposited in the company's regular business account at the Ohio Bank and Savings Company. They were not included in the Federal income tax returns originally filed by Ralph for the years 1943, 1944, and *292 1945. Scott Elsea, the accountant, was unaware of the fact that the company was earning any income not recorded in the books or that Ralph maintained any bank accounts, other than the business account at the Ohio Bank and Savings Company, in which business receipts were being deposited. Ralph never disclosed to Elsea the existence of the commission income or other income of the company which was not deposited in the business account at the Ohio Bank and Savings Company. He never told Elsea of his practice of withholding checks from the girls in the office. He never disclosed to Elsea the existence of the joint personal account or the account in the First National Bank. Elsea prepared monthly financial statements for the company based solely on the entries in the company's books, together with the deposit slips from the business account at the Ohio Bank and Savings Company. Ralph frequently telephoned him to inquire where he had placed these statements and often criticized him for failure to submit them more promptly. Elsea prepared the income tax returns of the company and of Ralph and Marie on the basis of the data contained in the financial statements. Consequently, he did not *293 include in the returns any receipts that had not been entered in the company's books or deposited in the business account in the Ohio Bank and Savings Company. Ralph and Marie would examine the books of the company two or three times a month. After preparation of the returns each year, Elsea placed them on Ralph's desk for signature and mailing. Ralph never commented to him in any way on the contents of the returns, and never called Elsea to discuss the figures contained therein. Partnership returns for the years 1943, 1944 and 1945 were filed on the accrual basis with the collector of internal revenue for the tenth district of Ohio in March of 1944, 1945 and 1946, respectively. These returns were signed by Ralph, and on each his signature appears below the following oath: "I swear (or affirm) that this return (including any accompanying schedules and statements has been examined by me, and to the best of my knowledge and belief is a true, correct, and complete return." On page one of each return the gross income of the Bearing and Transmission Company was reported to consist of gross receipts less cost of goods sold, based on opening inventory, closing inventory, purchases *294 and labor. The computation covers only the first seven lines of the page. On the 1943 and 1944 returns, all other lines under Gross Income, including line 12 "Other income", were left blank. On the 1945 return the word "Miscellaneous" is typewritten on the line headed "Other Income" and there appears the amount of $228.50. In his individual income tax returns for 1943, 1944, and 1945 filed in March of 1944, 1945 and 1946, respectively, Ralph reported one-half of the net income shown on the partnership returns of the Bearing and Transmission Company for these years. No income from commissions was reported in either the partnership or the individual returns. In May of 1946 Revenue Agent Susko commenced an investigation of the Bearing and Transmission Company. After looking over its books, he questioned the validity of the partnership and discussed it with Ralph. This was Ralph's first contact with any Government "tax man". Without knowing anything about the unreported commissions, Susko went to the Ohio Bank and Savings Company and asked Donald T. Decker, the cashier, to produce the ledger sheet of the joint personal account, in order to verify Marie's alleged $1,500 contribution *295 to the capital of the company in 1942. Decker failed to produce the card immediately. Susko made two or three further visits to the bank during early June, requesting the ledger sheet but it was not produced. Susko then left Findlay for three weeks and upon his return to Findlay on June 23, again called at the bank for the ledger sheet and again failed to obtain it. Decker was well acquainted with Ralph and saw him one to three times a week. The ledger sheet would have disclosed deposits of unreported commissions. On July 3, 1946, Susko felt he had enough information on the partnership issue and submitted his report without further inquiry and without getting the ledger sheet. Ralph personally caused the commission checks to be entered in the books after Revenue Agent Susko interviewed him, although Susko had never asked him any questions about commission checks at the time of the interview. On June 25, 1946, he consulted an attorney who recommended an accounting firm, Wideman, Madden and Dolan, located in Toledo, Ohio. The attorney communicated with this firm and two of its members came to Findlay in July, 1946. Ralph told them that the returns had omitted commission income and *296 that Fairfield Engineering Company, Rapids-Standard Co., and Towmotor Corporation "were knowingly" the only companies from which he had received commissions that had not been declared. He made no mention of miscellaneous income from Daybrook Hydraulic Corporation, Willys-Overland Company, Ohio National Company, and others, hereinafter mentioned, nor did he instruct the accountants or give them authority to examine the joint personal account or the account at the First National Bank. He asked them to make a complete audit of the books and "assumed" that if there was anything not reported in addition to commissions they would find it. Wideman, Madden and Dolan prepared amended partnership and individual returns for the years 1943-1945, inclusive, in which the commission income aggregating $48,258.20 was disclosed, and they were filed by Ralph in December, 1946. Scott Elsea had nothing to do with the amended returns. When commission income began to reappear on the books in July, 1946, Elsea was unaware of any reason for the sudden appearance of such entries after a lapse of five years. He posted them to the general ledger because he found journal entries which required such posting. *297 During the years 1942 through 1946 Ralph and Marie each deposited the following amounts in the business account of the Bearing and Transmission Company in the Ohio Bank and Savings Company, which amounts were credited to their respective net worth accounts on the books of the company: Year
Amount
1942
$1,500
1944
7,000
1945
5,000
1946
2,750
The net income of the company as reported in the original returns of the partnership for the years 1942 to 1946, inclusive, was as follows: 1942
$11,913.19
1943
13,727.76
1944
20,018.96
1945
13,806.19
1946
28,961.76
Miscellaneous unreported income. During the year 1943, Harry McCullough, an automobile dealer in Findlay, was in need of some fluorescent light fixtures and tubes and he asked Ralph to obtain them for him. In payment for these fixtures, he gave Ralph a check in the amount of $262. Although the Bearing and Transmission Company had a few fluorescent light fixtures and tubes in its inventory, the fixtures and tubes sold to McCullough were not recorded in its inventory and their cost was not shown on its books. Ralph deposited the check for $262 received by him from McCullough in *298 the joint personal account in the Ohio Bank and Savings Company, and no part of this amount was ever reported as income by the company or by Ralph. The company's profit on this sale amounted to $70.74. During 1944, The Daybrook Hydraulic Corporation issued a check to the Bearing and Transmission Company in the amount of $1,705.20. This check covered four invoices, three representing regular sales of inventory totalling $325.48, and the fourth representing the sale of steel plow cable, which the company did not carry in its inventory. Ralph deposited the $1,705.20 check in the joint personal account, and then drew a check on that account in the amount of $325.48 which he deposited in the company's account, and which in due course was entered in the company's books and recorded as income. The remaining $1,379.72 represented payment for the steel cable. The company's profit on the steel cable amounted to $372.52, which was never recorded on its books or included in its or Ralph's returns as income. On April 7, 1944, the Willys-Overland Company of Toledo, Ohio, issued a check to the order of the Bearing and Transmission Company in the amount of $1,682.01. This check was issued in payment *299 for some infra-red drying ovens, and was deposited in the joint personal account at the Ohio Bank and Savings Company. The company never carried infra-red ovens in stock and the cost of these ovens was not entered on its books. This item was not recorded as income on the books of the company and no part of the $1,682.01 was ever reported as income by the company or by Ralph. The company's profit on the sale of these ovens amounted to $454.14. During 1944 the company received a check from Lift Trucks, Inc. in the amount of $23.89, representing a commission earned by it. This amount was not recorded on the books of the company nor was it ever reported as income by the company or by Ralph. It was deposited in the joint personal account at the Ohio Bank and Savings Company. During 1944 the company also received from Marshal Pyle of Kent, Ohio, two checks for $57.37 and $7.66 for merchandise sold. These amounts were deposited in the joint personal account at the Ohio Bank and Savings Company, and were not recorded on the books of the Bearing and Transmission Company or reported as income by either the company or by Ralph. The company's profits on these sales were $17.56. During the *300 year 1945, the Bearing and Transmission Company received the following amounts which were not recorded on its books: $ 515.86
Check from Fostoria Industrial Serv-
ice Company covering commission
earned
90.80
Check from Jensen Specialty Com-
pany covering commission earned
40.00
Check from Winifred H. Smith cov-
ering commission earned
22,497.75
Series of checks from Ohio National
Company (a subsidiary of Daybrook
Hydraulic Corporation) representing
payment by it for a tank assembly
job
18,017.55
Series of checks from Daybrook Hy-
draulic Corporation representing pay-
ment by it for a piston plating job No part of these receipts was ever reported as income either on the partnership returns or on the individual returns of Ralph. The three checks for commissions were deposited in the Bearing and Transmission Company account at the First National Bank and the checks covering the last two items were deposited in the joint personal account at the Ohio Bank and Savings Company and in the account at the First National Bank. Kenneth Moon, purchasing agent of the Daybrook Hydraulic Corporation and of the Ohio National Company, awarded *301 the tank assembly job and the plating job to the Bearing and Transmission Company, and made an arrangement with Ralph whereby Ralph was to pay him $2 for each tank assembly unit delivered and $1 for each piston unit plated. These payments were made secretly and their existence was not known to Moon's employers. The payments were made in cash and no receipts were executed. Such payments were not ordinary; they were not normal, usual, or customary in the business world, or in the type of business in which the company was engaged. The number of tank assembly units delivered to the Ohio National Company was 2,710. The costs of producing these units amounted to $8,719, and these costs were recorded on the books of the Bearing and Transmission Company and deducted on its 1945 partnership return. The company also incurred an expense of $250 in connection with the cancellation of the contract. The company also paid Moon $5,420 pursuant to the arrangement between him and Ralph. The plating job was actually done by the Findlay Plating Company. It plated 6,110 units and they were shipped to Daybrook Hydraulic Corporation during the first 9 months of 1945. The Bearing and Transmission Company *302 paid $11,536.77 to the Findlay Plating Company for its work on the plating job. The company also paid Moon $6,110 pursuant to the arrangement between him and Ralph. Ralph Lashells understated the income of the Bearing and Transmission Company for the years 1943, 1944 and 1945 in the partnership returns of the company and his distributive share of such income in his individual income tax returns for those years with intent to defraud the Government of Federal income taxes justly due. A part of the deficiency as to each of these years was due to fraud with intent to evade tax. Opinion RAUM, Judge: 1. Although the matter is not entirely free from doubt, we think that Ralph and Marie Lashells were bona fide partners in the Bearing and Transmission Company ( Commissioner v. Culbertson, 337 U.S. 733; Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293, and that the income therefrom must be allocated in equal parts to both of them for the tax years in controversy. At the time of the organization of the disputed partnership, its capital was small, and Marie devoted full time to its affairs, being in full charge of the store *303 while her husband was on the road. The fact that she subsequently discontinued her daytime duties did not destroy the effectiveness of the partnership which had already been established. 2. A different situation exists with respect to the Ohio Conveyor Company, involved herein for the years 1945 and 1946. The Ohio Conveyor Company was a partnership entered into by Ralph Lashells with one R. A. Snyder. Petitioner relies upon testimony of a witness that the books of the Bearing and Transmission Company record an investment of $4,150.67 of its funds in the Ohio Conveyor Company and that this investment was charged to the personal accounts of Ralph and Marie in equal amounts. And it is urged that since the Bearing and Transmission Company was a valid partnership, any income received as a result of the investment in the Ohio Conveyor Company was properly divided between Ralph and Marie for tax purposes. However, no partnership agreement involving the Ohio Conveyor Company was described or introduced in evidence, nor was Snyder called as a witness. Marie testified that she never performed any services for the Ohio Conveyor Company, and no checks evidencing an investment in that company *304 were introduced in evidence. We have no way of knowing, on this record, to what extent the profits derived from the Ohio Conveyor Company may have been due to the personal efforts of Ralph. The record, in relation to the Ohio Conveyor Company issue, is wholly unsatisfactory, and this issue must be decided against petitioner for failure of convincing proof. Petitioner has not proved to our satisfaction that either the Bearing and Transmission Company or Marie had an interest in the Ohio Conveyor Company. Respondent's determination that 50 per cent of the net income of that partnership for the years 1945 and 1946 is taxable to Ralph is approved. Cf. Burnet v. Leininger, 285 U.S. 136; Settos v. United States, 192 Fed. (2d) 521 (C.A. 7. 3. Respondent's determination of deficiency is based in part upon the conclusion that Ralph understated his income by failing to report income received by the Bearing and Transmission Company as follows: $262 for 1943; $3,150.65 for 1944; and $29,625.19 for 1945. These amounts are reflected in the following checks: (a) 1943
Check from McCullough Motors for
$262.00.
(b) 1944
Check from Willys-Overland Company
for $1,682.01.
(c) 1944
Two checks from Marshal Pyle for
$57.37 and $7.66.
(d) 1944
Check from Lift Trucks, Inc. for
$23.89.
(e) 1944
Check from Daybrook Hydraulic for
$1,705.20 less $325.48 of this amount
which was reported as income.
(f) 1945
Check from Fostoria Industrial Serv-
ices Company for $515.86.
(g) 1945
Check from Jensen Specialities for
$90.80.
(h) 1945
Check from Winifred Smith for $40.00.
(i) 1945
Series of checks from Ohio National
Company totalling $22,497.75.
(j) 1945
Series of checks from Daybrook Hy-
draulic totalling $18,017.55 less in-
voices paid to the Findlay Plating
Company of $11,536.77.
*305 The checks represented by items (d), (f), (g) and (h) constituted commissions received by the Bearing and Transmission Company which had never been reported as income either by the company or by Ralph. They were income in their entirety, and Ralph was chargeable with his distributive share thereof. The checks represented by items (a), (b), (c), and (e) reflected unreported receipts for sales of merchandise. They did not constitute income in their entirety, since it was necessary to subtract the cost of the merchandise in order to determine the income represented thereby. The record is very unsatisfactory as to the cost of the articles involved, but, doing the best we can with the evidence at hand, we have concluded that the unreported income represented by these items was as follows: (a) McCullough Motors
$ 70.74
(b) Willys-Overland Company
454.14
(c) Marshal Pyle
17.56
(e) Daybrook Hydraulic
372.52 Ralph's distributive share of these amounts was never reported by him on his returns. Item (i) consists of a series of checks from Ohio National Company in the aggregate amount of $22,497.75, representing payment in 1945 for a so-called tank assembly job. The *306 cost of performing that job, namely, $8,719, had been recorded on the books of the Bearing and Transmission Company for 1945, and was deducted on its 1945 returns, but no part of the $22,497.75 receipts was included in its reported gross income, or in the reported gross income of Ralph for 1945. Petitioner now concedes that this was an income-producing transaction, but seeks to eliminate from the income the $5,420 (at the rate of $2.00 per unit) paid by Ralph to Kenneth Moon, the purchasing agent for Ohio National Company and Daybrook Hydraulic. The amounts thus paid to Moon were described euphemistically as "commissions". However, they were not in fact commissions, but were rather in the nature of bribes or graft. The payments were secret; they were not disclosed to Moon's employers; and they were made in cash. There is no showing whatever that the making of such payments constituted an "ordinary" or even a "necessary" expense, under Section 23 (a) of the Internal Revenue Code, and we know of no other provision of the statute under which they may be deducted. The record is utterly devoid of any proof that such payments were normal or customary either in the *307 business world or in the type of business in which the Bearing and Transmission Company was engaged. Accordingly, since the burden of proof in this respect in relation to the basic deficiency was upon the petitioner, we have found as a fact that these payments were not normal, usual, or customary in the business world, or in the type of business in which the company was engaged. This case is therefore sharply to be distinguished from Lilly v. Commissioner, - U.S. -, decided March 10, 1952, where the Court concluded that the payments there involved were "ordinary" since, as the Court viewed the record before it, such payments were not only "normal, usual and customary in size and character" in the localities in which the taxpayer did business, but also reflected "a nationwide practice". Petitioner, apparently aware that no deduction would be permissible under Section 23 (a) with respect to these secret payments, nevertheless seeks to take advantage of them tax-wise by urging they must be subtracted from the company's receipts before determining what goes into gross income. Stated otherwise, petitioner contends that the company was merely a "conduit" with respect to the funds that *308 it received, to the extent that it paid a portion thereof to Moon. We think that contention is without merit. The company was not in fact a conduit. The proceeds of the tank assembly job were received by the Bearing and Transmission Company as its own. It was under no obligation to the Ohio National Company to turn over any portion of these proceeds to anyone (cf. Sunray Oil Co. v. Commissioner, 147 Fed. (2d) 962, 966 (C.A. 10)) and the Ohio National Company did not even have any knowledge of the arrangement between Ralph Lashells and Kenneth Moon. Indeed, in view of the character of the arrangement between Moon and Ralph, it may well be doubted whether it resulted in a contractual relationship that would have been enforced by the Ohio courts. In any event, however, the company received the checks from Ohio National Company in 1945 "under a claim of right and without restriction as to * * * disposition". North American Oil v. Burnet, 286 U.S. 417, 424. These checks constituted income. If petitioner is to derive any advantage tax-wise from the amounts paid to Moon, there must be a showing that they constitute a deduction from gross income, and we think that *309 no such showing has been made. The situaion is wholly different from the one where the cost of goods sold must be subtracted from the proceeds received therefrom in order to determine the gross income attributable to the sale. Cf. Lela Sullenger, 11 T.C. 1076. We conclude that the Commissioner's action in attributing the proceeds of the Ohio National Company checks to the Bearing and Transmission Company was correct, and that Ralph Lashells was chargeable with his distributive portion thereof. A similar conclusion is required as to item (j). The checks aggregating $18,017.55 received from Daybrook Hydraulic Corporation for the piston plating job must be included in the gross income of the Bearing and Transmission Company, and the $11,536.77 paid by the latter to the Findlay Plating Company in connection therewith is, of course, deductible. But, as in the case of the tank assembly job, the $6,110 paid to Moon is neither a permissible deduction from gross income for the purpose of determining net income, nor may it be subtracted from the company's receipts in determining gross income. Ralph's distributive share of the income attributable to this item must be included *310 in his gross income. 4. Respondent has determined that a part of the deficiencies as to each of the years 1943, 1944, and 1945 was due to fraud. We are convinced by the evidence that such determination is correct and it must be approved. Moreover, the additions to tax for fraud are measured by the original returns, unaffected by amended returns which belatedly disclose additional income; such amended returns cannot operate to erase the fraud which tainted the original returns. Cf. Herbert Eck, 16 T.C. 511; Arlette Coat Co., 14 T.C. 751, 756; Aaron Hirschman, 12 T.C. 1223, 1229-1230; Harry Sherin, 13 T.C. 221, 229-230; Maitland A. Wilson, 7 T.C. 395. Petitioner attempts to place the blame for the omission of substantial amounts of commissions and other income from the partnership and other returns upon Elsea, the company's accountant. It is pointed out that Elsea had a key to the office, that the files were kept unlocked, and that nothing was hidden from him. The point is, however, that Ralph had so set up his operations that the checks representing the unreported income were deposited in accounts that were never *311 in fact disclosed to Elsea and they never found their way into the books of the company. We are satisfied from the record as a whole, which we have reviewed with great care, that the returns filed by Ralph Lashells for each of the years 1943, 1944, and 1945 were knowingly false, and that he intended to omit substantial amounts of income. He knew that checks representing commissions and other income were not made available to the girls who were charged with the responsibility of keeping the books, with the consequence that such checks could not have been entered on the books. Elsea made out the returns on the basis of what appeared on the books. It strains credulity to suggest that Ralph expected Elsea to ferret out these checks and enter them on the returns. The effort to place responsibility on Elsea's shoulders is a lame one indeed. We are convinced that Ralph was fully aware that his returns understated income, and the Commissioner's finding of fraud must be sustained. Decision will be entered under Rule 50.