T.C. Memo. 2016-28

UNITED STATES TAX COURT

RAYMOND S. MCGAUGH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13665-14.                                     Filed February 24, 2016.

P had a self-directed IRA of which M was the custodian and
which held stock in corporation X. P requested that M purchase
additional stock in X for the IRA. Although the investment in X was
not a prohibited investment for the IRA, M refused to purchase the
stock directly. At P's request M issued a wire transfer directly to X;
and more than 60 days thereafter, X in turn issued the stock in the
name of P's IRA. M reported the transaction to the IRS because M
had determined that the wire transfer was a distribution to P not
followed by a rollover investment within the period permitted under
I.R.C. sec. 408(d)(3). R consequently determined that there was a
distribution from the IRA to P and a deficiency in P's income tax for
the 2011 taxable year.

<u>Held</u>: There was no distribution from the IRA to P.

**[*2]**  <u>Eric C. Onyango</u>, for petitioner.

  <u>Michael C. Dancz</u> and <u>Kathryn E. Kelly</u>, for respondent.


MEMORANDUM OPINION


  GUSTAFSON, <u>Judge</u>:  The Internal Revenue Service ("IRS") issued to

petitioner, Raymond S. McGaugh, a statutory notice of deficiency pursuant to

section 6212[1] on March 17, 2014, for Mr. McGaugh's 2011 Federal income tax.

In the notice the IRS determined a deficiency in tax of $13,538 arising from a

distribution from Mr. McGaugh's individual retirement account ("IRA") and an

accuracy-related penalty of $2,708 under section 6662(a).  The matter is currently

before the Court on Mr. McGaugh's motion for summary judgment pursuant to

Rule 121, which the Commissioner has opposed.

  The issue for decision is whether a transaction involving the removal of

$50,000 from Mr. McGaugh's IRA to purchase stock for his IRA constituted a

distribution that was not rolled over within the 60-day period allowed in section

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "the Code"), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

[*3] 408(d)(3) and is thus taxable income. For the reasons stated below, we will grant summary judgment in Mr. McGaugh's favor.

## Background

The facts set forth below are based on the pleadings and other pertinent materials in the record and are not in dispute. See Rule 121(b). Mr. McGaugh's petition alleges an address in Illinois.

Since 2002 Mr. McGaugh has maintained a self-directed IRA with custodian Merrill Lynch, and the IRA held 10,000 shares of stock in First Personal Financial Corp. ("FPFC"). The Commissioner asserts, and we assume, that Mr. McGaugh is a member of the board of directors of FPFC, but the Commissioner has not denied that FPFC stock is permitted to be an asset in the IRA. In the summer of 2011, Mr. McGaugh requested that Merrill Lynch use funds from his IRA to purchase an additional 7,500 shares of FPFC stock. However, for reasons the record does not show, Merrill Lynch would not purchase the shares directly on Mr. McGaugh's behalf.

Consequently, Mr. McGaugh requested that Merrill Lynch initiate a wire transfer of $50,000 directly to FPFC. On October 7, 2011, Merrill Lynch initiated and FPFC received the wire transfer. (There is no evidence that Mr. McGaugh requested an IRA distribution to himself.) On November 28, 2011, FPFC issued

**[\*4]** the stock certificate not in Mr. McGaugh's name but instead in the name of "Raymond McGaugh IRA FBO Raymond McGaugh", as Mr. McGaugh had requested. FPFC claims that the stock certificate was mailed to Merrill Lynch on or about the same day as the November 28, 2011, issuance date on the certificate; but because Merrill Lynch states that the stock certificate was not received until "early 2012", we treat the timing of the transmittal of the stock certificate to Merrill Lynch as being in dispute and assume it was in 2012. Thereafter Merrill Lynch attempted to mail the stock certificate to Mr. McGaugh, but it was returned by the postal service at least twice. The record does not show where the original stock certificate is currently located; but we assume (as the IRS asserts) that Mr. McGaugh holds it (an assertion he denies).[2]

For purposes of Mr. McGaugh's motion, we assume that Merrill Lynch received the stock certificate from FPFC more than 60 days after the wire transfer, which Merrill Lynch therefore reckoned to be outside the 60-day limitation period

---

[2]The stock certificate evidently remains in limbo. Mr. McGaugh insists that Merrill Lynch is obliged to hold the stock as an asset of the IRA, but Merrill Lynch denies that it possesses the stock certificate. In early 2015 FPFC stated that, before it could issue a replacement certificate, it would need "a lost certificate affidavit with a hold harmless from Merrill Lynch * * * since that is the party that we issued the original certificate to". The year at issue is 2011, and we do not address the tax effects, if any, of the later dealings among Mr. McGaugh, FPFC, and Merrill Lynch.

**[*5]** for a qualified rollover transaction under section 408(d)(3). Believing the transaction to be subject to the rollover rules, and believing the transfer to be outside the 60-day limit, Merrill Lynch reported the $50,000 transaction as a taxable distribution on Form 1099-R, "Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc." and refuses to treat the FPFC stock as an asset of the IRA. Mr. McGaugh continues to object to the refusal.

The IRS determined that the wire transfer issued by Merrill Lynch constituted a "distribution" from Mr. McGaugh's IRA and was includible in gross income under sections 408(d) and 72 and that, because he had not yet reached age 59-1/2, it was an "early distribution" subject to the 10% additional tax of section 72(t). The IRS issued a notice of deficiency for the 2011 tax year determining a $13,538 deficiency in tax as well as an accuracy-related penalty of $2,708. Mr. McGaugh timely filed his petition on June 11, 2014, seeking redetermination of the liability and filed a motion for summary judgment on May 26, 2015, to which the Commissioner responded.[3]

---

[3]The Commissioner filed a response on June 24, 2015, and a supplemental response on September 8, 2015. At the Commissioner's request, this case was called at the Court's session in Chicago, Illinois, on October 19, 2015, so that a subpoena that the Commissioner had issued to Merrill Lynch could be enforced.

(continued...)

**[\*6]**                                          <u>Discussion</u>

I.      <u>Standard for summary judgment</u>

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of

Civil Procedure), the Court may grant summary judgment where there is no

genuine dispute as to any material fact and a decision may be rendered as a matter

of law.  The moving party (here, Mr. McGaugh) bears the burden of showing that

no genuine dispute of material fact exists, and the Court will view any factual

material and inferences in the light most favorable to the non-moving party.

<u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>cf.</u> <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (same standard under Fed. R. Civ. P. 56).

"The opposing party is to be afforded the benefit of all reasonable doubt, and any

inference to be drawn from the underlying facts contained in the record must be

viewed in a light most favorable to the party opposing the motion for summary

judgment." <u>Espinoza v. Commissioner</u>, 78 T.C. 412, 416 (1982).  Since we

consider Mr. McGaugh's motion for summary judgment, we draw all inferences in

---

[3](...continued)
Attorneys for Merrill Lynch produced documents to the Commissioner and
appeared at the calendar call.  The Commissioner's counsel stated that she would
review the documents and discuss them with Merrill Lynch's attorneys.  In the
months that have elapsed since then, the Commissioner has not filed any motion to
compel nor filed any further response to Mr. McGaugh's motion for summary
judgment.

[*7] favor of the Commissioner.  That is, we assume the facts as shown by the Commissioner, the non-moving party, or as shown by Mr. McGaugh and not disputed by the Commissioner.

II.    General IRA principles

As we previously explained in Peek v. Commissioner, 140 T.C. 216, 222-223 (2013):

> A taxpayer who invests his money in the hope of making a gain over a period of years--whether to fund his retirement or for any other purpose--normally must pay tax on that gain as he realizes it.  Sec. 1001(a), (c).  His payment of the tax from time to time diminishes the size of his investment and thereby, to some extent, diminishes his future gains.  However, a taxpayer may create an "individual retirement account", which is exempt from tax under section 408(e)(1) and in which his investment can therefore increase until his retirement without being diminished by income tax liability.  As long as the account qualifies as an IRA, the taxpayer-investor is not liable for income tax on the gains, so that the undiminished investment account can earn maximum returns until the time comes for payout, when the taxpayer will finally owe income tax on those greater gains.  Under section 408, the benefit of the traditional IRA is thus deferral of income tax liability on retirement investment gains. * * *

Generally, under section 72, amounts distributed to the taxpayer from an IRA are includible in the taxpayer's gross income, see sec. 408(d)(1), and those amounts are subject to a "10-Percent Additional Tax" if the taxpayer has not yet "attain[ed] age 59-1/2", see sec. 72(t).

**[*8]** The IRA must be a trust or a custodial account, administered by a trustee or custodian (here, Merrill Lynch) who acts as a fiduciary for that IRA. Sec. 408(a), (h); 26 C.F.R. sec. 1.408-2(a), (d), Income Tax Regs. The fiduciary is responsible for the investment and disposition of the property held in the IRA. 26 C.F.R. sec. 1.408-2(e).

An amount will not be treated as a taxable distribution from an IRA if it is a qualified rollover. Sec. 408(d)(3). A distribution is considered a qualified rollover contribution if the entire amount an individual receives is paid into a qualifying IRA or other eligible retirement plan within 60 days of the distribution. Id.; see also Schoof v. Commissioner, 110 T.C. 1, 7 (1998).

Because the IRA paid out $50,000 (to FPFC) at Mr. McGaugh's request and for his ultimate benefit, and because (as we assume for purposes of the pending motion) that amount was not repaid to the IRA (in the form of the FPFC stock) until after the 60-day rollover period, Merrill Lynch and the IRS treated the transaction as a taxable distribution.

III.    The occurrence of a distribution

A.    There was no literal distribution of IRA funds to Mr. McGaugh.

Section 408(d)(1) provides that "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or

[*9] distributee".[4] Construing the facts in the Commissioner's favor, the evidence shows that Merrill Lynch wired money to FPFC for which FPFC issued shares to the IRA. No cash, check, or wire transfer ever passed through Mr. McGaugh's hands, and he was therefore not a literal "payee or distributee" of any amount.

  B. <u>Mr. McGaugh was, at most, a conduit of the IRA funds</u>.

  The Commissioner evidently reckons that the foregoing account is an over-simplified description of the transaction, since Merrill Lynch declined to make a direct purchase and instead simply wired funds at Mr. McGaugh's instruction, thus arguably putting the funds at Mr. McGaugh's discretion. But if we adopt this perspective on the transaction and acknowledge Mr. McGaugh as the director of the transaction, the outcome does not change. The owner of an IRA is entitled to direct the investment of the funds without forfeiting the tax benefits of an IRA. Even acknowledging that Mr. McGaugh pulled all the strings, it remains true that the funds the IRA released went straight to the investment and resulted in the stock shares' being issued straight to the IRA.

---

  [4]The regulations elaborate slightly by providing that "any amount <u>actually</u> paid or distributed <u>or deemed</u> paid or distributed * * * shall be included in the gross income of the payee or distributee", 26 C.F.R. sec. 1.408-4(a)(1), Income Tax Regs. (emphasis added); but it appears that a "deemed distribution" occurs when an IRA ceases to qualify because of a prohibited transaction or where the taxpayer uses the IRA's assets as collateral for a loan, <u>id.</u> para. (d). Thus, the regulations shed no light on the issue in this case.

**[\*10]** If we analyze the situation for possible "constructive receipt" of the funds from Merrill Lynch by Mr. McGaugh (and constructive transfer of the funds by him to FPFC), the outcome still does not change. "It is well established that the mere receipt and possession of money does not by itself constitute gross income." Liddy v. Commissioner, T.C. Memo. 1985-107, aff'd, 808 F.2d 312 (4th Cir. 1986). "We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit." Diamond v. Commissioner, 56 T.C. 530, 541 (1971), aff'd, 492 F.2d 286 (7th Cir. 1974).

Thus, money received as a mere agent or conduit is not includible in gross income. Liddy v. Commissioner, 808 F.2d at 314; Diamond v. Commissioner, 56 T.C. at 541. We have held that this principle may apply in the case of a taxpayer and an IRA, see Ancira v. Commissioner, 119 T.C. 135, 138 (2002); and the IRS so acknowledges.[5] The question at issue here is whether, in the wire

---

[5]As the Commissioner states in his supplemental opposition (at 7-8) to the motion for summary judgment, "if Merrill Lynch, as custodian of petitioner's IRA, purchased the shares with funds from petitioner's IRA, either through petitioner as an agent/conduit or otherwise, then there may not have been a distribution. See Ancira v. Commissioner, 119 T.C. 135, 137-40 (2002) (the withdrawal of funds from an IRA did not give rise to a distribution, where the withdrawal was in the

(continued...)

**[*11]** transfer and subsequent stock purchase, Mr. McGaugh acted as a conduit to or an agent of the IRA fiduciary and custodian, Merrill Lynch.

Neither the Code nor the applicable regulations provide specific guidance on whether or when an amount is considered to have been "paid or distributed out of an individual retirement plan" through the use of the beneficiary as a conduit from the custodian to the investment. This Court has, however, addressed a case involving facts similar to Mr. McGaugh's: In Ancira v. Commissioner, 119 T.C. at 136, the taxpayer maintained a self-directed IRA, and during the year at issue he requested that his IRA custodian purchase a particular company's stock for his IRA. While the issuing company's stock was a permissible asset that could be held by the IRA, company policy of the custodian of the account did not permit it to directly purchase stock that was not publicly traded. Id. The taxpayer therefore requested a check made payable to the non-public issuing company, and the custodian sent the taxpayer the requested check. Id. The taxpayer forwarded the check to the issuing company, and the issuing company issued the stock certificate. Id. at 136-137. The certificate stated that the taxpayer's IRA was the owner of the shares of the stock, and the taxpayer presumed that the issuing

<sup>5</sup>(...continued)
form of a check that could not be negotiated by the account owner, and the funds were used by the IRA custodian to acquire stock)."

[*12] company had sent the stock certificate to the IRA custodian as instructed. Id. at 137. However, for unspecified reasons the certificate was not delivered to the custodian, and the taxpayer did not discover the mistake until after receiving a notice of deficiency from the IRS. Id. After learning of the error, the taxpayer directed the issuing company to send the stock certificate to him, and he then delivered it directly to the custodian. Id.

In Ancira we held that no distribution from the IRA to the taxpayer occurred when the custodian delivered the check to him. Id. at 139. We observed that no distribution would have occurred if the custodian had either purchased stock directly from the issuing company or sent a check to a broker who then purchased the stock for the IRA. Id. at 137-138. We held that the taxpayer acted as an agent or conduit for the custodian because the taxpayer arranged the purchase but was not in constructive receipt of the check and the ownership of the stock was directly assumed by the IRA. Id. at 138. Moreover, we determined that the delay of the delivery of the stock certificate to the custodian was a bookkeeping error, which "did not alter the ownership of the stock by the IRA and certainly did not transfer the ownership to * * * [the taxpayer]." Id. at 140.

Like the taxpayer in Ancira, Mr. McGaugh wished to acquire for his IRA stock that apparently could not be purchased directly by the custodian, Merrill

[*13] Lynch. Mr. McGaugh therefore arranged the purchase of FPFC stock, instructed Merrill Lynch to make the wire transfer to FPFC, and instructed FPFC to deliver the certificate directly to Merrill Lynch. Moreover, unlike the taxpayer in Ancira, who received a check from the IRA and delivered it to the issuing company, Mr. McGaugh never personally handled any check by which the IRA funds were transmitted to FPFC. Instead, he requested that Merrill Lynch transfer the funds via wire transfer directly to the issuing company, and that transfer was duly made without Mr. McGaugh's interposition. And unlike the stock in Ancira, the FPFC stock certificate was sent directly to the custodian.

The Commissioner emphasizes that "[i]t appears that petitioner is in possession of the purported stock certificate." Even if Mr. McGaugh had physical possession of the stock certificate, he was not in constructive receipt of the asset. The "essence [of constructive receipt] is that funds which are subject to a taxpayer's unfettered command and which he is free to enjoy at his option are constructively received by him whether he sees fit to enjoy them or not." Ancira v. Commissioner, 119 T.C. at 138 (quoting Estate of Brooks v. Commissioner, 50 T.C. 585, 592 (1968)). Here, the stock was issued not in Mr. McGaugh's name but in the name "Raymond McGaugh IRA FBO Raymond McGaugh". Even with physical possession of the stock certificate, Mr. McGaugh could not have realized

**[\*14]** any practical utility or benefit from the certificate in the name of the IRA. (And if Merrill Lynch's attempts to mail the IRA's stock certificates to Mr. McGaugh in "early 2012" (contrary to his instructions and intention) gave him ownership of the shares, then that was a distinct 2012 transaction that would not affect his 2011 income tax liability.)

We are not persuaded by the Commissioner's argument that Mr. McGaugh's circumstances are similar to that of the taxpayer in Dabney v. Commissioner, T.C. Memo. 2014-108. In Dabney this Court found a taxable distribution from the taxpayer's IRA when the taxpayer explicitly requested an IRA distribution (to himself) with the goal of purchasing land for his IRA but failed to return the distribution (or any other property) to the account within the 60-day rollover period of section 408(d)(3). Id. at \*5. The policies of the custodian, Charles Schwab, did not permit real property to be an asset of its IRAs, id. at \*4, \*11, so in March 2009 Mr. Dabney requested a distribution of his IRA funds and a transfer of those funds to the title company handling the property sale. Contrary to Schwab's policies, Mr. Dabney directed the company to issue title in the name of the IRA, but it failed to do so and put the property in his name. He tried to sell the property and finally succeeded in January 2011 and wired the proceeds to Schwab

[*15] as a purported "rollover contribution". We held that the transfer of the funds from the IRA to Mr. Dabney constituted a taxable distribution.

Here, by contrast, Merrill Lynch previously permitted FPFC stock as an asset to be held in Mr. McGaugh's IRA, and its subsequent correspondence seems to indicate that if the stock at issue had been received within the 60-day period, it would have been accepted. And here the stock certificate bears the name of the IRA as its owner; and it is therefore not like the real property in Dabney that, for more than a year, was titled in the name of the individual taxpayer. Mr. Dabney requested a distribution in order to conduct a real estate transaction not permitted by the IRA, whereas Mr. McGaugh directed the IRA to make a permissible investment. This case is not like Dabney.

Rather, this case resembles Ancira. We hold that Mr. McGaugh did not receive a distribution when Merrill Lynch made the wire transfer to FPFC; and to the extent that he had control over the wired funds, he at most acted as a conduit for the IRA custodian. Consequently, the 60-day limitation on a rollover under section 408(d)(3) does not really come into play in this case. The timing of the mailing of the shares (i.e., more than 60 days after the wire transfer) does not alter our conclusion that there was no distribution from the IRA to Mr. McGaugh. We will therefore grant Mr. McGaugh's motion for summary judgment.

[*16] To reflect the foregoing,

An appropriate order and decision will be entered.