T.C. Memo. 2016-29

UNITED STATES TAX COURT

MARK VANDENBOSCH AND JULIE VANDENBOSCH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1143-14.                          Filed February 24, 2016.

Robert D. Grossman, Jr., and Derek N. Hatch, for petitioners.

Fred Edward Green, Jr., for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  The Commissioner issued a notice of deficiency
determining a $52,682 deficiency and a $10,536 section 6662(a) accuracy-related
penalty for a substantial understatement of income tax to Mark and Julie

[*2] Vandenbosch for 2011.[1]  The deficiency relates exclusively to a distribution from Dr. Mark Vandenbosch's self-directed simplified employee pension (SEP) individual retirement account (IRA).  The issues for consideration are whether the burden has shifted to the Commissioner under section 7491(a); whether Dr. Vandenbosch received a $125,000 taxable distribution from his SEP-IRA, and if so, whether he is liable for the additional tax under section 72(t); and whether the Vandenbosches are liable for an accuracy-related penalty for a substantial understatement of income tax.

On the basis of the evidence presented at trial, we find that we do not need to address burden shifting under section 7491(a) because we can decide these issues on the preponderance of the evidence.  We hold that Dr. Vandenbosch received a taxable distribution because he had a claim of right to the withdrawal and the distribution was not a nontaxable rollover.  Moreover, the Vandenbosches are liable for the 10% additional tax on the distribution because they did not establish that Dr. Vandenbosch meets any of the exceptions in section 72(t).  However, they are not liable for an accuracy-related penalty for a substantial understatement of income tax because they have established that they acted with

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] reasonable cause and in good faith when they relied on the advice of a tax professional.

FINDINGS OF FACT

Dr. Vandenbosch was 46 years old and married to Mrs. Vandenbosch during 2011, the year in issue.

Dr. Vandenbosch is an anesthesiologist. He is the director of the operating room and the chief of anesthesia services at Palm Bay Hospital. He is also the president of Palm Bay Anesthesia Associates, P.A., which he and three partners formed in the mid-nineties.

Palm Bay Anesthesia Associates adopted a self-directed SEP plan agreement with Edward D. Jones & Co., L.P. (Edward Jones), for Dr. Vandenbosch and the other partners. Through the SEP plan agreement Palm Bay Anesthesia Associates could make deductible contributions to the plan, which contributions would be placed in the partners' self-directed IRAs that were set up through the SEP plan agreement. Edward Jones is the custodian of Dr. Vandenbosch's SEP-IRA.

Dr. Vandenbosch could request that Edward Jones invest the SEP-IRA funds in specific assets, such as mutual funds and stocks. Dr. Vandenbosch believed that he was able to direct the funds in any way and that Edward Jones

[*4] would facilitate the transaction. Whenever Dr. Vandenbosch wanted to invest the funds, he would contact a representative at Edward Jones and instruct that representative what assets to trade or buy. The representative would then invest in those assets. Before 2011 Dr. Vandenbosch directed Edward Jones' representatives to invest in mutual funds and stocks.

I.    John R. Carver

Dr. Vandenbosch met Mr. Carver in the operating room in 1998 when Mr. Carver was working as a licensed radiology technologist. Before becoming a radiology technologist, Mr. Carver spent time working as a stockbroker.

Dr. Vandenbosch and Mr. Carver developed a friendship outside of the hospital. They went golfing and out to dinners. Because Dr. Vandenbosch believed that Mr. Carver was knowledgeable about investments, he often sought Mr. Carver's opinion on the stock market and investment opportunities. Dr. Vandenbosch believed that Mr. Carver was always correct in his investment advice.

In early 2011, while Mr. Carver was discussing his current investment activities, he explained to Dr. Vandenbosch that he was involved in a company named Altenesol, which publicly traded as IAHL. IAHL was formed to develop a

**[\*5]** liquefied natural gas plant in Colombia. By 2011 IAHL was working with an investment bank to raise capital to begin the project.

At that time Mr. Carver owned an interest in IAHL, and he was IAHL's vice president of marketing and sales. He primarily sought out investors to raise capital for the project. Mr. Carver told Dr. Vandenbosch that IAHL needed capital for its expenses and that any loan would be repaid quickly because IAHL expected to receive funding from a large Colombian company. Dr. Vandenbosch explained that he had $125,000 available in his SEP-IRA that Mr. Carver could use for developing IAHL.

## II.    The Note

On March 1, 2011, Dr. Vandenbosch and Mr. Carver executed a contract memorializing an agreement to lend money to IAHL. The note was titled "Corporate Loan Agreement/Promissory Note", and it recited that it was between "IAHL or John Carver" as the borrower and "Mark J. Vandenbosch, SEP IRA" as the lender. Under the heading titled "Loan Amount" the parties agreed to "$125,000 (One hundred twenty five thousand dollars and 00/100)". The parties did not specify when or how the funds would be advanced.

The parties provided far more detail for how the loan would be repaid. The parties specified the payment terms, interest rate, date of payment, late payment

**[\*6]** penalty, and place of payment. They agreed that the borrower was required to pay the lender $125,000 together with a flat $25,000 interest payment on the maturity date, May 31, 2011. If the payment was not made by the maturity date, an additional flat late payment fee of 5% would be imposed after 90 days, regardless of whether the borrower repaid the loan on the 91st day or at any time thereafter. Perhaps most importantly, the parties agreed that the borrower would repay the loan to "Mark J. Vandenbosch" at his personal residence.

On the signature page Dr. Vandenbosch and Mr. Carver signed the note in their personal capacities. Dr. Vandenbosch signed his name above the line that read "Mark J. Vandenbosch" and that denominated him as lender. He did not indicate that he was signing on behalf of his SEP-IRA. Likewise, Mr. Carver signed his name on the line that read "John R. Carver" and that denominated him as borrower. Mr. Carver did not indicate that he was signing on behalf of IAHL.

Although the note stated that IAHL or Mr. Carver was the borrower, Dr. Vandenbosch and Mr. Carver believed that Mr. Carver was the true borrower. Mr. Carver testified that he included IAHL in the borrower's name because he wanted Dr. Vandenbosch to know that the loan was for IAHL's expenses and advancing the project but that he would be responsible for repaying the loan. Likewise, Dr. Vandenbosch was (and still is) looking to Mr. Carver for repayment.

[*7] III.      Transfer of Funds

On March 7, 2011, Dr. Vandenbosch took the following steps to fulfill the

obligation under the note:

1.      Dr. Vandenbosch signed a form titled "Retirement Distribution
        or Internal Transfer".  He requested that Edward Jones
        distribute $125,000 from his SEP-IRA into his joint account
        with Mrs. Vandenbosch at Edward Jones.  He did not elect to
        have Federal and State income tax withheld.  He checked a box
        indicating "I am under the age of 59 1/2.  (IRS premature
        distribution TAX APPLIES * * * )".

2.      Edward Jones distributed $125,000 from Dr. Vandenbosch's
        SEP-IRA into the Vandenbosches' joint account at Edward
        Jones.

3.      Dr. Vandenbosch wired $125,000 from the joint account to his
        personal account at BankFirst.

4.      Dr. Vandenbosch wired $125,000 from the BankFirst account
        to "John R. Carver" at a JPMorgan Chase Bank, N.A. (Chase)
        account.

The loan has not been repaid.  IAHL did not accept the offer from the

Colombian company for financing.  Additionally, Mr. Carver asked for and

received extensions of the due date on the loan because IAHL has not yet

generated revenue.

Likewise, Dr. Vandenbosch has not sought repayment of the loan.

Although the interest amount and late payment fees are flat, Dr. Vandenbosch has

[*8] not been concerned about repayment because he views his investment as a way for him to get his metaphorical foot in the door.

In addition to lending money to IAHL, Dr. Vandenbosch is now an investor in IAHL.  He rolled over funds from his SEP-IRA to an IRA account with E*Trade Financial Corp. (E*Trade) to purchase shares of stock of IAHL. Likewise, he rolled over funds from his E*Trade account into a Roth IRA at E*Trade, which now holds IAHL stock.  Additionally, Dr. Vandenbosch and his son own a joint account with right of survivorship at E*Trade, and that account holds IAHL stock.

Mr. Carver believes that he will be able to repay the loan eventually. Currently, IAHL has the contracts to begin building a liquefied natural gas plant. Before construction can begin, IAHL must obtain additional permits.  Dr. Vandenbosch is also confident that Mr. Carver will repay the loan.

In January 2012 Dr. Vandenbosch received from Edward Jones a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting a gross distribution of $125,000. The form bears a code indicating that the withdrawal is an early distribution and that the entire $125,000 is taxable.

[*9]   The Vandenbosches employed Maizel & Maizel Accountants to prepare and file their joint Form 1040, U.S. Individual Income Tax Return, for 2011.  The Vandenbosches have been using the firm for over 20 years.  Dr. Vandenbosch explained to his return preparer what had happened with the distribution and provided his return preparer with the note and information about the wire transfers that ended with Mr. Carver's receiving the funds.  The Vandenbosches reported that they received $125,000 in pensions and annuities; however, they reported it was a nontaxable rollover.  With their return, the Vandenbosches included a copy of a letter from Maizel & Maizel Accountants which stated that the return preparer believed that the funds were directly rolled over from the SEP-IRA to IAHL's account or John R. Carver's account.  They also included a copy of the note.

The Commissioner examined the Vandenbosches' 2011 return and issued a notice of deficiency on December 2, 2013, making adjustments to taxable income from the distribution and determining an additional tax under section 72(t) and an accuracy-related penalty for a substantial understatement of income tax.

While residing in Nevada, the Vandenbosches timely petitioned for redetermination of the deficiency.  They challenge the Commissioner's determination that the distribution is taxable and that they are liable for the additional tax under section 72(t) and the accuracy-related penalty.

[*10]                                    OPINION

The Vandenbosches argue that they did not receive a distribution from their SEP-IRA because the various transactions beginning with the note and ending with the funds being transferred to Mr. Carver should be viewed as a whole, collapsed, and treated as an investment by the SEP-IRA in IAHL.  The Commissioner argues that this was a taxable distribution that was used to finance a loan to Mr. Carver.  Further, the Commissioner argues that both of the Vandenbosches' theories fail because the promissory note was not a bona fide investment because Dr. Vandenbosch and Mr. Carver signed in their personal capacities and because the loan was never repaid.

I.      Burden of Proof

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving otherwise.[2]

The Vandenbosches argue that the burden of proof should shift to the Commissioner pursuant to section 7491(a).  Section 7491(a) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability if the taxpayer provides credible evidence with respect to that issue and also substantiates the item, maintains records, and cooperates with

---

[2]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

**[\*11]** the Commissioner's reasonable requests for information. Taxpayers bear the burden of proving that they have met the section 7491(a) requirements.[3]

Shifting of the burden of proof is relevant only in the rare event of an evidentiary tie or a failure of proof.[4] Because there is no evidentiary tie as to any factual issues, we do not need to decide the allocation of the burden of proof under section 7491(a). We can decide the factual issues on the basis of a preponderance of the evidence in the record.

## II.    Distributions From IRAs

An IRA is a trust created or organized in the United States for the exclusive benefit of an individual or his or her beneficiaries if the trust meets the requirements of section 408(a). A SEP is an IRA or an individual retirement

---

[3]Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012).

[4]Knudsen v. Commissioner, 131 T.C. 185, 187-189 (2008), supplementing T.C. Memo. 2007-340; see also FRGC Inv., LLC v. Commissioner, 89 F. App'x 656 (9th Cir. 2004) (holding that the Court was not required to determine who had the burden of proof under section 7491(a) when the preponderance of the evidence favored the Commissioner), aff'g T.C. Memo. 2002-276.

[*12] annuity that meets the requirements of section 408(k).[5] Undistributed IRA income is generally exempt from tax unless the account ceases to be an IRA.[6]

Section 408(d)(1) provides, with certain exceptions, that any amount paid or distributed out of an IRA must be included in the gross income of the payee or distributee as provided in section 72. The Vandenbosches advance two arguments why the withdrawal should be excluded from their gross income, both of which disregard the form of the transactions. In essence, they argue that the transactions should be treated as if the SEP-IRA distributed the funds directly to Mr. Carver for IAHL and then the SEP-IRA held the note as an asset. To reach their conclusion, they argue that the withdrawal was not a distribution because Dr. Vandenbosch did not have a claim of right to the withdrawn funds. Alternatively, they argue that the withdrawal was a nontaxable rollover.

A.    Claim of Right

"It is well settled that a taxpayer who receives amounts under a claim of right or without restrictions as to its disposition must include such amounts in

---

[5]Sec. 408(k).

[6]See sec. 408(e)(1).

[*13] gross income."[7] The Vandenbosches argue that Dr. Vandenbosch did not have a claim of right to the $125,000 withdrawn from the SEP-IRA because he was acting as a conduit or an agent in transmitting the funds to Mr. Carver. This is the factual element common in all claim of right doctrine cases--that is, the receipt of money by a taxpayer with an "imperfect right to retain it."[8]

A taxpayer has a claim of right to income if the taxpayer: (1) receives the income; (2) controls the use and disposition of the income; and (3) asserts either a "claim of right" or entitlement to that income.[9] The record before us demonstrates that Dr. Vandenbosch had a claim of right with respect to the $125,000 withdrawn from his SEP-IRA. At all times, Dr. Vandenbosch had unfettered control over the funds.

---

[7]Shaara v. Commissioner, T.C. Memo. 1980-247; accord Diamond v. Commissioner, 56 T.C. 530, 541 (1971) ("We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit."), aff'd, 492 F.2d 286 (7th Cir. 1974); see also N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932).

[8]Nordberg v. Commissioner, 79 T.C. 655, 664 (1982) (quoting Wootton, "The Claim of Right Doctrine and Section 1341", 34 Tax L. Rev. 297 (1981)), aff'd, 720 F.2d 658 (1st Cir. 1983); Hamlett v. Commissioner, T.C. Memo. 2004-78, 2004 WL 551146, at *3.

[9]Hennessey v. Commissioner, T.C. Memo. 2007-131, 2007 WL 1518702, at *19 (citing N. Am. Oil Consol. v. Burnet, 286 U.S. at 424), aff'd, 102 A.F.T.R.2d (RIA) 2008-6750 (5th Cir. 2008).

**[\*14]** Nevertheless, the Vandenbosches argue that because Dr. Vandenbosch had a prior obligation to provide funds to Mr. Carver, he was acting as a conduit or an agent in arranging the transfer. Indeed, "[t]he underlying principle [in the claim of right doctrine] is that the taxpayer is allowed to exclude from his income money received under an unequivocal contractual, statutory, or regulatory duty to repay it, so that he really is just the custodian of the money."[10] Accordingly, we have held that a taxpayer does not have a claim of right to income received in his or her capacity as a conduit or an agent.[11]

The Vandenbosches rely on Ancira v. Commissioner, 119 T.C. 135 (2002), to show that Dr. Vandenbosch was acting as a conduit or an agent. In Ancira the taxpayer requested the custodian of his self-directed IRA to invest in stock that was not publicly traded but was available directly from the issuer. The custodian drew a check on the taxpayer's IRA account, and at all times the check was payable to the issuing company. The custodian sent the check to the taxpayer, who in turn delivered it to the issuing company. After considerable delay, the

---

[10]Ill. Power Co. v. Commissioner, 792 F.2d 683, 689 (7th Cir. 1986), aff'g in part, rev'g in part 83 T.C. 842 (1984); see also Cont'l Ill. Corp. v. Commissioner, T.C. Memo. 1989-636, aff'd in part, rev'd in part, 998 F.2d 513 (7th Cir. 1993).

[11]Ancira v. Commissioner, 119 T.C. 135, 138 (2002); Roger v. Commissioner, T.C. Memo. 2011-277, 2011 WL 5885083, at \*5.

[*15] company issued a stock certificate stating that the taxpayer's IRA purchased the shares of stock. That certificate was delivered to the taxpayer who, in turn, delivered it to the custodian.[12] We addressed the issue of whether the taxpayer received a distribution when he received the check.

We held that the taxpayer did not receive a distribution. We explained that the taxpayer was acting as a conduit or an agent because his only actions were those of arranging the transaction and delivering to the issuing company the check that was payable to the issuing company. We found that the taxpayer lacked the "unfettered command" over the funds; he was a mere conduit.[13] The key factual difference between the taxpayer in Ancira and Dr. Vandenbosch is the amount of control each held and exercised.

Dr. Vandenbosch had unfettered control over the funds. Upon distribution, the taxpayer in Ancira merely delivered a check that was payable to the issuing company; he did not have access to the funds.[14] In contrast, Dr. Vandenbosch had access to the funds. He directed his SEP-IRA to distribute the funds into his account. Afterwards, he transferred the funds between his accounts and eventually

---

[12]Ancira v. Commissioner, 119 T.C. at 136-137.

[13]Ancira v. Commissioner, 119 T.C. at 137-139.

[14]Ancira v. Commissioner, 119 T.C. at 137.

[*16] to Mr. Carver.  These actions show that he had unfettered control over the funds.  Accordingly, he was not acting as a mere conduit or an agent when the funds were distributed to him.

Likewise, Dr. Vandenbosch's facts are distinguishable from the facts in McGaugh v. Commissioner, T.C. Memo. 2016-28, also filed today.  In McGaugh the taxpayer also had a self-directed IRA.  Because the IRA custodian was unwilling to purchase a particular stock, the taxpayer arranged the purchase by having the custodian wire funds directly to the issuing company, which in turn issued a stock certificate in the name of the taxpayer's IRA and sent the stock certificate to the custodian.[15]  We held that the taxpayer was not a "payee or distributee" and that, to the extent he had control over the wired funds, he at most acted as a conduit.[16]  The taxpayer did not receive a distribution because no funds ever passed through his hands.  Moreover, the taxpayer was not in constructive receipt of the funds because the funds went straight to the issuing company and the issuing company sent the stock shares to the custodian.  At no time did the taxpayer have control over the funds, nor could he negotiate the stock certificate, which was issued in the name of the IRA.  Unlike the taxpayer in McGaugh, Dr.

_____

[15]McGaugh v. Commissioner, T.C. Memo. 2016-28, at *3-*4.

[16]McGaugh v. Commissioner, at *9.

[*17] Vandenbosch received and exercised control over the funds as demonstrated by the transfers between his accounts and eventually to Mr. Carver. Moreover, at no time has the note been held by Dr. Vandenbosch's IRA, and at all times the note has been payable to Dr. Vandenbosch.

Nonetheless, the Vandenbosches argue that because Dr. Vandenbosch had a prior obligation to provide funds to Mr. Carver, he was acting as a conduit or an agent in arranging the transfer. They rely on Lashells' Estate v. Commissioner, 208 F.2d 430 (6th Cir. 1953), aff'g in part, rev'g in part 11 T.C.M. (CCH) 274 (1952), and Shaara v. Commissioner, T.C. Memo. 1980-247. Both Lashells' Estate and Shaara involved similar facts.[17] The taxpayers received payments, portions of which they were required to pay over as kickbacks.[18] Although the kickback agreements were unenforceable, the taxpayers were both held to be mere conduits because in both cases the kickbacks were necessary to receive those portions of the payments in the first instance; without making the kickbacks, they

---

[17]Lashells' Estate v. Commissioner, 208 F.2d 430 (6th Cir. 1953), aff'g in part, rev'g in part 11 T.C.M. (CCH) 274 (1952); Shaara v. Commissioner, T.C. Memo. 1980-247, 40 T.C.M. (CCH) 643 (1980).

[18]Lashells' Estate v. Commissioner, 208 F.2d at 433; Shaara v. Commissioner, 40 T.C.M. (CCH) at 644-645.

[*18] would not have received the payments.[19] There is no similar linkage between the distribution received by Dr. Vandenbosch and the loan to Mr. Carver; Dr. Vandenbosch could receive a distribution regardless of whether he intended to make a loan to Mr. Carver. And at all times, Dr. Vandenbosch had control over the funds as evidenced by the fact that he transferred the funds between his accounts multiple times before depositing them into Mr. Carver's account. And perhaps most notable, the Vandenbosches' situation is distinguishable because, in the end, Dr. Vandenbosch is entitled to the funds.

Dr. Vandenbosch had control over the funds upon receipt and is entitled to control those funds upon repayment, as well. Dr. Vandenbosch's free movement of the funds demonstrates that he had complete control over them upon receipt. Moreover, the note requires that the loan be repaid to Dr. Vandenbosch, not to the SEP-IRA. The evidence, both how he used the funds and his personal entitlement to repayment of the funds, is clear that he was not a mere conduit and that he had (and will have) a claim of right over those funds.

_____

[19]Lashells' Estate v. Commissioner, 208 F.2d at 433, 435-436 (finding that without the agreement to provide kickback payments to the purchasing agent, the taxpayer would have billed at the cost); Shaara v. Commissioner, 40 T.C.M. (CCH) at 644-645, 646 (finding that without the agreement to provide kickback payments to the public officials, the taxpayer would not have inflated the invoices).

**[\*19]** B.     Rollover Contribution

A rollover under section 408(d)(3) is an exception to the general rule that any amount paid or distributed out of an IRA must be included in gross income.  It provides that the taxpayer does not have to include in gross income a distribution if the entire amount that he or she receives is paid into an IRA or other eligible retirement plan within 60 days of the distribution.[20]

The Vandenbosches argue that if this is a distribution, it was reinvested in the SEP-IRA within the prescribed 60-day period if we look at the substance of the transaction instead of the form.  Under this theory, Dr. Vandenbosch distributed $125,000 out of his SEP-IRA, immediately placed the funds back into the SEP-IRA, and then distributed them to Mr. Carver.  The Vandenbosches are asking us to disregard the various agreements executed in this transaction in order to find that the distribution was made directly to Mr. Carver.

Because the U.S. Court of Appeals for the Ninth Circuit, to which this case would be appealable, has not explicitly adopted the Danielson rule,[21] we apply the

---

[20]Sec. 408(d)(3)(A); see Schoof v. Commissioner, 110 T.C. 1, 7 (1998).

[21]Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967) (holding that a party may challenge the tax consequences flowing from a written agreement as construed by the Commissioner "only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction

(continued...)

**[\*20]** "strong proof" rule when taxpayers attempt to disregard the form of their own transactions.[22] The strong proof rule requires more than a preponderance of the evidence that the terms of the written instrument do not reflect the actual intentions of the contracting party.[23]

The Vandenbosches argue that because the SEP-IRA was funding its obligation under the note, the distribution should be considered paid directly to Mr. Carver. However, the substance of what occurred is entirely consistent with the form. Dr. Vandenbosch received a distribution, exercised control over the funds, eventually lent funds to IAHL, and personally has a right to repayment on the note. We will not disregard the various agreements. We hold that Dr. Vandenbosch received a taxable distribution because he had a claim of right to the withdrawal and the distribution was not a nontaxable rollover.

---

[21](...continued) or to show its unenforceability because of mistake, undue influence, fraud, duress, etc."), vacating and remanding 44 T.C. 549 (1965).

[22]Schulz v. Commissioner, 294 F.2d 52, 55 (9th Cir. 1961), aff'g 34 T.C. 235 (1960); Haas & Assocs. Accountancy Corp. v. Commissioner, T.C. Memo. 2000-183, 2000 WL 800474, at \*4, supplemented by 117 T.C. 48 (2001), aff'd, 55 F. App'x 476 (9th Cir. 2003); see also Throndson v. Commissioner, 457 F.2d 1022, 1024-1025 (9th Cir. 1972), aff'g Schmitz v. Commissioner, 51 T.C. 306, 315-316 (1968).

[23]Major v. Commissioner, 76 T.C. 239, 247 (1981); Haas & Assocs. Accountancy Corp. v. Commissioner, 2000 WL 800474, at \*4.

[*21] III.    Section 72(t)

Section 72(t)(1) imposes, with certain exceptions, an additional tax on an early distribution from a qualified retirement plan equal to 10% of the portion of the amount that is includable in gross income.  The most common exception is that the distribution occurred on or after the taxpayer attained the age of 59-1/2.[24]

When Dr. Vandenbosch received the distribution, he had not reached the age of 59-1/2, and he has not alleged that he comes within any of the other exceptions under section 72(t).  Accordingly, Dr. Vandenbosch is liable for the 10% additional tax on the distribution.

IV.    Accuracy-Related Penalty for Substantial Understatement of Income Tax

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax that is due to any substantial understatement of income tax.  An understatement of income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of tax required to be shown on the return or $5,000.[25]  However, if taxpayers have substantial

---

[24]Sec. 72(t)(2)(A)(i).

[25]Sec. 6662(d)(1)(A).

[*22] authority for the tax treatment of an item, then the portion of the tax attributable to that item is not included in the understatement.[26]

The Commissioner bears the burden of production for these penalties before the burden shifts to taxpayers to prove that the penalty should not apply.[27] Because we sustain the Commissioner's deficiency, the understatement of income tax is substantial.

The penalty does not apply to any portion of the underpayment where the taxpayers establish that they acted with reasonable cause and in good faith.[28] Taxpayers may establish that they acted with reasonable cause and in good faith through reliance on the advice of a tax professional.[29] The reliance must have been reasonable and in good faith under all the circumstances.[30] To demonstrate that the reliance was reasonable and in good faith, the taxpayer must prove by preponderance of the evidence that "(1) [t]he adviser was a competent professional

---

[26]Sec. 1.6662-4(d)(1), Income Tax Regs.

[27]See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[28]Sec. 6664(c)(1).

[29]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(c), Income Tax Regs.

[30]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 98-99; sec. 1.6664-4(b)(1), (c), Income Tax Regs.

[*23] who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment."[31]

Taking into consideration all the facts and circumstances, we find that the Vandenbosches acted with reasonable cause and in good faith in their reliance on the advice of a tax professional. The Vandenbosches have been using the accounting firm for over 20 years. Dr. Vandenbosch explained to his return preparer what had happened with the distribution and provided his return preparer with the note and information regarding the transfer of funds that ended with Mr. Carver's receiving the funds. The Vandenbosches included with their return a copy of a letter from their tax preparer stating that he did not include the $125,000 as taxable because he believed it was directly rolled over. Accordingly, the Vandenbosches are not liable for a section 6662(a) accuracy-related penalty for a substantial understatement of income tax.

V.    Conclusion

On the basis of the examination of the record before us and the parties' arguments at trial, we find that we do not need to address burden shifting under section 7491(a) because we can decide these issues on the preponderance of the

---

[31]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99.

[*24] evidence. Additionally, we hold that when Dr. Vandenbosch withdrew $125,000 from his SEP-IRA, it was a taxable distribution and not a nontaxable rollover. Likewise, the Vandenbosches are liable for the 10% additional tax on the distribution because Dr. Vandenbosch does not meet any exceptions in section 72(t). However, the Vandenbosches are not liable for a section 6662(a) accuracy-related penalty for a substantial understatement of income tax because they acted with reasonable cause and in good faith in their reliance on the advice of their tax professional.

To reflect the foregoing,

An appropriate decision will be entered.