T.C. Memo. 2020-152

UNITED STATES TAX COURT

BRETT JOHN BALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22833-14.  Filed November 10, 2020.

P caused $209,600 to be distributed from his SEP-IRA to an LLC that he controlled.  The LLC lent the received amount in the name of the SEP-IRA and, eventually, contributed the amounts repaid on the loans (plus interest) to the SEP-IRA.

<u>Held</u>:  Because P had unfettered control over the distributions, the distributions were an item of gross income to P for the year distributed.

<u>Held</u>, <u>further</u>, because P was not 59-1/2 years of age in the year of the distributions, the 10% I.R.C. sec. 72(t) additional tax applies.

<u>Held</u>, <u>further</u>, P is liable for an accuracy-related penalty.

[*2]   Bryan D. Dixon, for petitioner.

Wesley J. Wong, for respondent.


MEMORANDUM OPINION


HALPERN, Judge:  Respondent has determined a deficiency in, and an accuracy-related penalty with respect to, petitioner's 2012 Federal income tax of $67,031 and $13,406, respectively.  The issues for decision are:  (1) whether $209,600 distributed to petitioner by the custodian of his simplified employee plan-individual retirement account (SEP-IRA) was an item of gross income for 2012; (2) whether, on account of that distribution, petitioner is liable for an additional 10% tax on early distributions from a qualified plan, and (3) whether he is liable for the accuracy-related penalty on account of an underpayment due to a substantial understatement of income tax.

All section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

Petitioner bears the burden of proof.  See Rule 142(a).

**[*3]** <u>Background</u>

<u>Introduction</u>

The parties have submitted this case for decision without a trial pursuant to Rule 122. The facts stipulated are so found, and the documents stipulated are accepted as authentic. Petitioner resided in Las Vegas, Nevada, when he filed the petition. We summarize additional relevant facts.

<u>Petitioner's Activities</u>

During 2012 and 2013, petitioner participated in a SEP-IRA the custodian of which was JP Morgan Chase Bank, N.A (Chase). On two occasions in 2012, petitioner requested and received distributions from the SEP-IRA account, of $170,000 and $39,600, respectively (collectively, distributions). On each occasion, to effect the distribution, petitioner executed a Traditional IRA Withdrawal Request form that requested that Chase pay him the designated amount. He checked a box on each form indicating that the withdrawal was an early distribution with no known exceptions to being taxable. He further instructed Chase to make the distribution into a Chase business checking account that he had opened in the name of a Nevada limited liability company, The Ball Investment Account, LLC (Ball LLC).

**[*4]**   Petitioner was the sole owner of Ball LLC and its managing member.  The Ball LLC checking account (Ball LLC account) was not a retirement account.

Immediately upon the distribution of the first $170,000 into the Ball LLC account in June 2012, petitioner wired a like amount from the account to a Nevada title company to fund a real estate loan to Petersen Development, LLC (Development LLC).  The title company recorded the receipt as:  "New Loan from the Ball Sep Account".  The loan was secured by a deed of trust that shows "The Ball Sep Account" as the beneficiary.  Development LLC repaid the loan in April 2013 with a check payable to "The Ball SEP Account".  Petitioner immediately deposited the payoff check into the SEP-IRA account.  His account statement shows the deposit as "rollover contribution".

Petitioner treated similarly the second distribution from the SEP-IRA of $39,600 in July 2012.  Upon receipt of that amount by the Ball LLC account, petitioner wired a like amount to fund a real estate loan to Svarga LLC.  The note memorializing the loan shows the lender as The Ball SEP Account.  The loan was repaid in installments in 2012 and 2013, all checks drawn to "The Ball SEP Account".  Petitioner deposited the checks into the SEP-IRA account, the checks being reflected in account statements as either rollover contributions or current year contributions.

**[*5]** Information Reports

Chase issued to petitioner Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2012 reporting that he had received taxable distributions from the SEP-IRA of $209,600 and that the distributions were subject to Distribution Code 1, indicating an early distribution with no known exceptions to being taxable. During 2012 petitioner was not yet 59-1/2 years of age.

Chase also issued to petitioner Form 5498, IRA Contribution Information, for 2012, which, among other things, reported that the fair market value of the account was $57,507, which was the same amount shown as the principal balance on an account statement for the SEP-IRA as of December 31, 2012. The values of the outstanding loans to Development LLC and Svarga LLC were not reflected in that principal balance.

Petitioner's 2012 Return and Respondent's Automated Underreporter (AUR) Program

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for his 2012 taxable (calendar) year. On the return, he reported both that he had received total IRA distributions of $209,600 and that none of that amount was gross income. He reported zero taxable income and no tax due.

**[*6]** Petitioner's 2012 Form 1040 drew the attention of respondent's AUR program, and respondent sent petitioner Notice CP 2000, which is used when a taxpayer's return information does not match data reported to the Internal Revenue Service by employers, banks, and other third parties. The Notice CP 2000 informed petitioner that his treatment of the IRA distribution on his 2012 Form 1040 did not match information that Chase had reported on the Form 1099-R, and, as a result, he owed taxes of $67,031 and a substantial income tax understatement penalty of $13,406. The notice invited petitioner to respond to the notice if he disagreed with the proposed changes. Petitioner did not respond, and, subsequently, respondent determined the deficiency, additional tax, and penalty on which this case is based.

## Discussion

I.  Distributions From the SEP-IRA

A.  Introduction

An IRA is a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries that meets the requirement of section 408(a). A SEP is an IRA or an individual retirement annuity that meets the requirements of section 408(k). Undistributed IRA income is generally exempt from tax unless the account ceases to be an IRA. See sec. 408(e)(1).

**[\*7]** An IRA must be a trust or a custodial account administered by a trustee or custodian (in this case, Chase) who acts as a fiduciary for the IRA. Sec. 408(a), (h); sec. 1.408-2(a), (d), Income Tax Regs. "The fiduciary is responsible for the investment and disposition of the property held in the IRA." McGaugh v. Commissioner, T.C. Memo. 2016-28, at \*8 (citing section 1.408-2(e), Income Tax Regs.), aff'd, 860 F.3d 1014 (7th Cir. 2017).

Section 408(d)(1) provides that any amount paid or distributed out of an IRA is included in the gross income of the payee or distributee as provided under section 72.

B.     Distributions

Petitioner directed Chase to withdraw $209,600 from the SEP-IRA and deposit the funds into the Ball LLC account. As Ball LLC's managing member, he controlled that account. The Ball LLC account was not a qualified retirement account. The record contains no evidence that Chase had any knowledge of, or control over, the use that Ball LLC made of the $209,600 Chase deposited into the Ball LLC account or that Chase had any fiduciary responsibility with respect to Ball LLC's disposition or investment of those funds. Nor does the record contain evidence that Chase ever possessed any documents associated with the loan either to Development LLC or to Svarga LLC. Petitioner reported the distributions on

**[\*8]** his 2012 Form 1040 because Ball LLC apparently was a disregarded entity.[1] Thus, absent some authority to the contrary, it would seem the distributions would constitute items of gross income to him.  See secs. 72, 408(d)(1).

### C.    Petitioner's Arguments

Petitioner's principal argument to the contrary concerns his (or, more precisely, Ball LLC's) authority with respect to the distributions.  He argues that "the essential question in this case" is whether the movement of funds from the SEP-IRA through the Ball LLC account to, and then back from, Development LLC and Svarga LLC described a "conduit agency arrangement."  Under that theory, Ball LLC acted as a mere facilitator, transferring funds between the SEP-IRA and the two other LLCs.  This Court has previously found in certain circumstances that an otherwise taxable IRA distribution was not includible in a taxpayer's gross income when the taxpayer was acting as an agent or conduit on behalf of the IRA's custodian to carry out an investment.  See, e.g., Ancira v. Commissioner, 119 T.C. 135, 138 (2002); McGaugh v. Commissioner, T.C. Memo. 2016-28.  But we have also found that, when a distributee had unfettered

---

[1]While it was not stipulated by the parties, we assume that Ball LLC made no election under sec. 301.7701-3(c), Proced. & Admin. Regs., to be classified as a corporation.  See sec. 301.7701-3(b)(1)(ii), Proced. & Admin. Regs. (providing that a domestic LLC that has a single owner is disregarded as an entity separate from that owner in the absence of an election to the contrary).

[*9] control over an IRA distribution, he could not claim that he was acting as a mere conduit or an agent for the IRA custodian with respect to the distributed funds. Vandenbosch v. Commissioner, T.C. Memo. 2016-29.

Our difficulty with petitioner's argument is that we cannot conclude that Ball LLC was acting as an agent or conduit on behalf of Chase (as custodian of the SEP-IRA) when Ball LLC received and made use of the distributions. Chase had no knowledge of the disposition of the $209,600 that it deposited into the Ball LLC account other than that it made the deposits at petitioner's direction. Petitioner controlled Ball LLC, and nothing in the record convinces us that he did not have unfettered control over the $209,600 Ball LLC received from Chase. Yes, petitioner caused Ball LLC to lend the distributions nominally for the benefit of "The Ball SEP Account", but he could just as well have made the loans in Ball LLC's name or in his own name. The facts of this case are closer to those of Vanderbosch than to those of Ancira and McGaugh. Ball LLC was not a conduit or agent for Chase.

Alternatively, petitioner argues that because the funds were deposited into the Ball LLC account, rather than petitioner's own checking account, the distributions were not income to him. We disagree. Amounts paid or distributed out of an IRA are "included in gross income by the payee or distributee * * * in

[*10] the manner provided under section 72." Sec. 408(d)(1). And while neither the statute nor the regulations define the terms "payee or distributee", we have said: "Generally, the payee or distributee of an IRA is the participant or beneficiary who is eligible to receive funds from the IRA." Roberts v. Commissioner, 141 T.C. 569, 576 (2013). In some cases the general rule is inapplicable. See, e.g., id. at 582 (holding that a taxpayer is not a payee or distributee within meaning of section 408(d)(1) with respect to improper withdrawals from his IRA account without his knowledge by his soon-to-be divorced spouse). However: "[T]he mere fact that the distribution is made by the plan administrator to A rather than to B does not make A the distributee." Darby v. Commissioner, 97 T.C. 51, 58 (1991). Petitioner was the distributee, and that is sufficient for us to conclude that the distributions were an item of gross income to him for 2012 even though he directed the distributions be deposited into the Ball LLC account.

## II. Additional 10% Tax on Early Distributions

Section 408(d)(1) directs us to section 72 for the general rule with respect to the taxability of IRA distributions, and section 72(t) provides that, if a taxpayer has not attained the age of 59-1/2 at the time of the distribution, the tax on the distribution is increased by 10% of the portion of the distribution includible in

**[*11]** gross income. During 2012, petitioner was not yet 59-1/2 years of age.

Accordingly, the distributions are subject to the 10% section 72(t) additional tax.

III.    Accuracy-Related Penalty

Section 6662(a) and (b)(2) provides for an accuracy-related penalty of 20%

on the portion of an underpayment of tax attributable to "[a]ny substantial

understatement of income tax." Section 6662(d)(2)(A) generally defines the term

"understatement" as the excess of the tax required to be shown on the return over

the amount shown on the return as filed. In the case of an individual, an

understatement is "substantial" if it exceeds the greater of 10% of the tax required

to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An understatement is

reduced, however, by the portion attributable to the treatment of an item for which

the taxpayer had "substantial authority" or, in the case of items adequately

disclosed, a "reasonable basis". Sec. 6662(d)(2)(B). Section 6664(c)(1) provides

an exception to the imposition of the section 6662(a) accuracy-related penalty if it

is shown that there was reasonable cause for the underpayment and the taxpayer

acted in good faith.

Section 7491(c) imposes the burden of production in any court proceeding

on the Commissioner with respect to the liability of any individual for penalties

and additions to tax. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[*12] "In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate." Almquist v. Commissioner, T.C. Memo. 2014-40, at *15; see also, e.g., Smethers v. Commissioner, T.C. Memo. 2018-140, at *9; Penley v. Commissioner, T.C. Memo. 2017-65, at *16; Sherrer v. Commissioner, T.C. Memo. 2011-198, 2011 WL 3584798, at *7. If the Commissioner carries his burden, the taxpayer has the burden of proving that any affirmative defenses apply, such as reasonable cause or adequate disclosure. Higbee v. Commissioner, 116 T.C. at 446-447.

Normally, the Commissioner's burden of production includes making a prima facie case that the section 6751(b)(1) requirement for written supervisory approval has been met. See Kestin v. Commissioner, 153 T.C. 14, 28 (2019); Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Nevertheless, section 6751(b)(2)(B) provides an exception from the requirement for penalty approval for a "penalty automatically calculated through electronic means."

The examination of petitioner's return was processed through the AUR program. That software program automatically calculated the substantial-understatement-of-income-tax penalty through electronic means. Thus, the

[*13] penalty is within the exception provided under section 6751(b)(2)(B), and respondent was not required to establish that written supervisory approval had been obtained. See Walquist v. Commissioner, 152 T.C. 61, 73-74 (2019).

On his 2012 return, petitioner reported no tax due. Respondent determined a deficiency in petitioner's 2012 Federal income tax of $67,031. We see no error in respondent's determination. Therefore, petitioner's understatement of his 2012 income tax exceeds both $5,000 and 10% of the tax required to be shown on the return. See sec. 6662(d)(1)(A). Respondent has discharged his burden of production under section 7491(c), and it is for petitioner to prove that the penalty should not apply. See Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioner argues that he had reasonable cause for his failure to report the distributions as gross income on his 2012 Form 1040 because he "strived to remain compliant with his qualified plan, expending a significant amount of time and resources" to do so, and, further, that he made a "good-faith effort to disclose the distribution on his return[]."

Beyond his claim that he did so, petitioner has introduced no evidence of how he strived to comply with the rules governing distributions from IRAs. Reliance on professional advice, for instance, may constitute reasonable cause and good faith. Petitioner has shown no such reliance. A good faith but unreasonable

[*14] mistake of law is not sufficient to remove liability for a section 6662(d)(1)(A) understatement penalty when the law is clear.  See, e.g., Felton v. Commissioner, T.C. Memo. 2018-168, at *36; Niemann v. Commissioner, T.C. Memo. 2016-11, at *18 ("[W]hile we have granted relief from accuracy-related penalties because of an honest mistake of law, that relief is limited to situations where the law is unclear.").  Petitioner has not shown that his mistake of law was reasonable.

In addition, we do not find petitioner's disclosure adequate or sufficient to apprise respondent of the taxable distributions, see sec. 6662(d)(2)(B)(ii)(I); nor has he established the existence of a reasonable basis for this treatment of the distributions, see sec. 6662(d)(2)(B)(ii)(II).  Disclosure is adequate if it includes "the relevant facts affecting the item's tax treatment".  Sec. 6662(d)(2)(B)(ii)(I).  Subject to certain exceptions, disclosure must be made on a Form 8275, Disclosure Statement, or, in the case of positions contrary to a regulation, a Form 8275-R, Regulation Disclosure Statement.  Sec. 1.6662-4(f)(1) and (2), Income Tax Regs.; see also Galloway v. Commissioner, 149 T.C. 407, 417 (2017); Rev. Proc. 2012-51, 2012-51 I.R.B. 719.

Petitioner's disclosure appears to be limited to lines 15a and 15b of his Form 1040, which merely state that he received a nontaxable distribution of $209,600.

**[*15]** This disclosure does not meet the standard of section 6662(d)(2)(B)(ii)(I).

Petitioner's understatement thus remains a substantial understatement.  We sustain

respondent's penalty determination.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.