REVISED MARCH 18, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 13, 2009

Charles R. Fulbruge III
Clerk

No. 08-60284

LINDA K MINTON

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

Appellee

Appeal from a Decision of
the United States Tax Court

Before JONES, Chief Judge, JOLLY, Circuit Judge, and CARDONE,[*] District
Judge.

PER CURIAM:

In this appeal from the Tax Court, Linda Minton argues that a transaction
among her, her parents, and her brother, all of whom were shareholders of
Long's Preferred Products, Inc., created a second class of stock thereby
terminating the company's status as a small business corporation. The Tax
Court determined that the transaction did not create a second class of stock, and
the court sustained the deficiency assessed against Minton. We agree with the
Tax Court's determination and affirm its judgment.

---

[*] United States District Judge of the Western District of Texas, sitting by designation.

I.

A.

Generally the income of a corporation is taxed twice, once at the corporate level and again at the shareholder level when the money is distributed as dividends. A small business corporation, however, may avoid this onerous double taxation by electing to be an S corporation ("S-corp"). Gitlitz v. Comm'r, 531 U.S. 206, 209 (2001). An S-corp, as a pass-through entity, does not have to pay income tax. I.R.C. § 1363(a). Instead, each shareholder must pay tax on his pro rata share of the corporate profits. Id.§ 1366(a)(1); Gitlitz, 531 U.S. at 209; Nail v. Martinez, 391 F.3d 678, 681 (5th Cir. 2004).

Only corporations that conform to the Internal Revenue Code's definition of a "small business corporation" may elect to be an S-corp. The Code's definition limits small business corporations to those corporations that, among other characteristics, have only one class of stock. I.R.C. § 1361(b)(1)(D). If an S-corp issues a second class of stock, it ceases to fit the definition of a small business corporation, and its S-corp status is automatically terminated. Id. § 1362(d)(2)(A).

B.

Long's Preferred Products, Inc. ("LPP") is a family-owned janitorial and paper-supply company. Julian E. Long ("Julian") and his wife Alma Long started LPP in the 1950s and incorporated the business in 1976. Soon after its incorporation, LPP sought and received S-corp treatment. At the time, Julian and Alma were the sole owners of LPP's one hundred outstanding shares. As Julian and Alma aged, their children, Julian W. "Dooksie" Long ("Dooksie") and Linda Minton, gradually took control of the company. In 1986, Minton and Dooksie each supposedly purchased nineteen shares from their parents. Minton asserts that in exchange for these shares Alma and Julian received monthly distributions from LPP. Julian and Alma initially received $4,000 per month,

but the amount was reduced to $2,000 when Alma died in 1990. There are no executed documents reflecting any of these transactions.

By 1996, through purchase, gift, and bequest, Julian and Alma had relinquished all of their shares to the children, and Minton and Dooksie each owned a 50% interest in LPP. In 1997, a dispute arose. Minton and Dooksie determined that one would have to buy the other out. When the negotiations broke down, Julian and Dooksie attempted to squeeze Minton out. Minton then sued in Louisiana state court to establish her 50% ownership.[1] Julian and Dooksie argued that the alleged 1986 sale was merely an inchoate plan to evade Alma's creditors. The sale, they asserted, never actually took place. Under this view, Julian still owned nineteen LPP shares, and he and Dooksie collectively owned substantially more shares than Minton. Minton vigorously asserted that the transaction had in fact taken place and that her father no longer owned any shares. But she was unable to produce any of the purported transaction documents.[2] The evidence was weak on both sides, but the court found Minton's testimony to be more credible than Dooksie's and declared that Minton owned half of LPP.

During the course of the litigation, Minton's counsel discovered an audio recording of a 1986 shareholder meeting.[3] From this recording, he concluded that the monthly distributions to Julian and Alma constituted a preferential distribution of LPP's income, not a purchase payment for their stock by Minton and Dooksie. Minton's counsel concluded that this preferential distribution created a second class of stock and automatically terminated LPP's S-corp status. If LPP's S-Corp election was terminated, then LPP was no longer a pass-

---

[1] See Minton v. Long's Preferred Prods., Inc., 2008 WL 241543 (La. Ct. App. Jan. 30, 2008).

[2] At some point, Julian produced the original promissory note, but it was unsigned.

[3] The recording is not in the record; we have only an unauthenticated transcript.

through entity. Minton therefore personally owed no taxes on LPP's profits, but only owed taxes on money actually distributed to her by the company. Upon her counsel's recommendation, Minton did not report her share of LPP income on her 1998 tax return, and she filed amended returns for 1996 and 1997.

Soon thereafter, a revenue agent conducted an investigation and concluded that the monthly distributions did not evidence a second class of stock. Thus, LPP was still an S-corp, and Minton owed taxes on her share of the income. The IRS assessed a deficiency of $165,366, and Minton petitioned the Tax Court for a redetermination.[4]

### C.

In the Tax Court, Minton continued to assert that the 1986 transaction terminated LPP's S-corp status.[5] To make her argument she addressed Treasury Regulation § 1.1361-1. Subsection (l)(1) of that regulation states that "a corporation is treated as having only one class of stock if all outstanding shares of stock of the corporation confer identical rights to distribution and liquidation proceeds." Furthermore,

> [t]he determination of whether all outstanding shares
> of stock confer identical rights to distribution and
> liquidation proceeds is made based on the corporate

---

[4] The deficiency originally included taxes owed on income from Master Distributors, Inc., another S-corp owned by Minton and Dooksie. The parties settled this issue before trial.

[5] Because shareholders usually fare better under a pass-through regime, it is unusual to find a shareholder arguing that the corporation in which he owns stock has lost its S-corp status. The following explains Minton's unusual position in this case. In most years, even though LPP retained nearly all of its earnings, it would make distributions to each shareholder sufficient to pay the taxes incurred by the shareholder as a result LPP's income. In 1998, however, LPP stopped making tax-payment distributions. Also in 1998, LPP made an accounting adjustment resulting in a reported income that was significantly higher than normal. Thus, Minton faced an abnormally high tax liability, and LPP was not making distributions to cover that liability.

At oral argument, Minton's counsel suggested that the cessation of tax-payment distributions is a common tactic used to squeeze out unwanted shareholders. Whether Minton's rights as a shareholder are being abused has no bearing on the issue before us.

> charter, articles of incorporation, bylaws, applicable state law, and binding agreements relating to distribution and liquidation proceeds (collectively, the governing provisions).

Treas. Reg. § 1.1361-1(l)(2)(i) (emphasis added). Citing these two provisions,[6] Minton argued that the 1986 transaction constituted a binding agreement regarding distribution and liquidation rights and the distributions to Julian and Alma were indicative of a second class of stock. The Tax Court was not persuaded and concluded that Minton failed to prove that the 1986 transaction constituted a binding agreement providing Julian and Alma disproportionate distribution rights. Specifically, the court found that there was no evidence that the directors of LPP took any formal corporate action sufficient to bind the company in a manner that affected distribution and liquidation rights of the S-Corp.

Alternatively, the court found that, even if the 1986 transaction constituted a "binding agreement," Minton failed to establish that the distributions were payments to Julian and Alma qua shareholders. The court thought it was more likely that the distributions were made on behalf of Dooksie and Minton on account of the debt they incurred by purchasing the shares in 1986. This conclusion was supported by Minton's state court testimony and affidavit, in which she stated that the monthly payments to her parents were made on her behalf through LPP.

## II.

We review a Tax Court decision the same as we review a district court decision: findings of fact are reviewed for clear error and issues of law are reviewed de novo. Green v. Comm'r, 507 F.3d 857, 866 (5th Cir. 2007).

---

[6] Despite relying upon § 1.1361-1(l)(2)(i) in the Tax Court, Minton now asserts that it does not apply. See Part II-B, infra.

A.

We find no error in the Tax Court's conclusion that Minton did not carry her burden of proving that the 1986 transaction constituted the creation of a second class of LPP stock.[7] Like the state court and the Tax Court, we must observe that there is very little evidence from which to discern the nature and form of the transaction. This factor works against Minton, who has the burden of proof. Minton's only evidence is her own testimony and LPP's distribution records from 1993 to 1998. This evidence demonstrates only that the parents received monthly distributions from LPP. It tells us nothing of the form of the transaction. The parties could have implemented a transfer of the shares from the parents to the children resulting in a fixed monthly payment to the parents in any number of ways. It is conceivable, although unlikely, that the parties could have structured the transaction in a manner that bound LPP to distribute a preferred stream of income to the parents; there is, however, no evidence that the transaction took this form. We agree with the Tax Court's conclusion that the evidence as a whole suggests that it is more probable that the transaction was structured in a way that neither formally nor legally bound LPP. To be sure, Minton's testimony in the Louisiana litigation suggested that she and Dooksie purchased the shares directly and the monthly payments by LPP were simply made on their behalf.

If the burden of proof were on the Commissioner, our conclusion may not be as certain. But Minton bears the burden, and we find no error in the Tax Court's conclusion that she failed to carry it.

B.

Minton also asserts that the Tax Court erred by applying Treasury Regulation § 1.1361-1(I). That subsection applies to tax years and transactions

---

[7] Tax Court Rule 142(a) provides that the burden of proof is on the petitioner.

occurring after 1992. Treas. Reg. § 1.1361-1(I)(7). A corporation and its shareholders, however, may elect to apply the regulation to tax years prior to 1992. Id. The Tax Court implied such an election by Minton's reliance upon the regulation in her arguments. Both Minton and the Commissioner agree that the Tax Court erred by implying such an election. We also agree that the regulation is inapplicable despite Minton's reliance upon it in the Tax Court. The provision only permits the retroactive application of the regulation to prior tax years, not prior transactions.[8]

Nonetheless, the error is harmless because, as we stated earlier, the evidence is not convincing that the 1986 transaction created a second class of stock.

### III.

For the reasons given, we find no error in the Tax Court's conclusion that Minton failed to carry her burden of proof. The judgment of the Tax Court is therefore

AFFIRMED.

---

[8] "[A] corporation and its shareholders may apply this § 1.1361-1(I) to prior taxable years. Treas. Reg. § 1.1361-1(I)(7).