T.C. Memo. 2018-105

UNITED STATES TAX COURT

CRAIG P. MOWRY AND CRICKET U. MOWRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21407-16.                    Filed July 5, 2018.

Doug S. Chiapuzio, for petitioners.

Amy B. Ulmer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge: Respondent determined deficiencies, additions to tax, and penalties due from petitioners as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|------------------------------|---------------------|
| 2011 | $11,841 | $1,254 | $2,368.20 |
| 2012 | 89,158 | --- | 17,831.60 |

**[*2]** Before the filing of the petition respondent issued a supplement to the notice of deficiency withdrawing the accuracy-related penalties originally determined against petitioners for the years in issue.

After concessions the issues for decision are: (1) whether petitioners are required to include in income for the years in issue flowthrough income from Mowry Rebar, Inc. (Mowry Rebar), an S corporation in which petitioner Craig Mowry (petitioner) owned an interest; (2) if petitioners are required to include income from Mowry Rebar, whether Mowry Rebar is entitled to additional deductions for the years in issue; and (3) whether petitioners are liable for the addition to tax under section 6651(a)(1) for filing their income tax return late for 2011. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Oregon when they filed their petition.

**[*3]** <u>Mowry Rebar</u>

Petitioner and his brother, Geoff Mowry (G. Mowry), incorporated Mowry Rebar in Oregon in March 2004. From the date of incorporation and during the years in issue petitioner owned 49% of the shares of Mowry Rebar, and G. Mowry owned 51%. Rebar is a product mixed with concrete to make concrete stronger. Mowry Rebar was a construction company that specialized in manufacturing rebar to customer specifications and installing the product at jobsites. It elected to be treated as an S corporation for Federal income tax purposes. When petitioner and G. Mowry incorporated Mowry Rebar, they agreed that distributions would be proportional to their ownership shares.

Petitioner, G. Mowry, and G. Mowry's spouse, Michele Mowry (M. Mowry), were the directors of Mowry Rebar, and each participated in the company's business. G. Mowry served as Mowry Rebar's president, M. Mowry served as corporate secretary, and petitioner served as vice president. G. Mowry directed the administrative aspects of Mowry Rebar's business. He did the bidding for large projects, and he oversaw payments to vendors and employees. M. Mowry was Mowry Rebar's office manager. She and G. Mowry were responsible for managing the company's bookkeeping and accounting.

**[*4]** Petitioner's work for Mowry Rebar primarily involved managing operations in the field. He spent most of his working hours at jobsites. When he was in the company's office, he did some billing and some bidding for smaller projects. Petitioner received compensation as an employee of Mowry Rebar for the years in issue. Cricket Mowry (petitioner wife) was also an employee of Mowry Rebar. She worked on matters relating to payroll, and sometimes she had other bookkeeping duties, as requested by M. Mowry.

For years prior to the years in issue Mowry Rebar filed Forms 1120S, U.S. Income Tax Return for an S Corporation, and issued Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., for G. Mowry and petitioner. These filings reflect that the shareholders received cash distributions from Mowry Rebar proportional to their stock ownership. Schedules K-1 prepared for 2009 reflect that G. Mowry and petitioner received distributions of $100,725 and $96,775, respectively. Schedules K-1 for 2010 reflect that G. Mowry and petitioner received distributions of $95,776 and $92,021, respectively.

For years prior to the years in issue Mowry Rebar claimed deductions for depreciation expenses. It claimed depreciation deductions of $34,165 for 2009 and $27,233 for 2010, and for each of those years it filed Form 4562, Depreciation and Amortization, which identified the items of property being depreciated.

**[*5]** 2012 Developments

In July 2012 petitioner wife went on bed rest, and another employee took over her duties at Mowry Rebar. While on bed rest she continued to receive paychecks as a salaried employee of the company. Petitioner continued in his employment at Mowry Rebar during 2012. In that year, he began to examine more closely the administration of the company's business.

In July or August 2012 petitioner noticed that certain credits cards in his name, which he maintained for business purposes, were being used without his authorization to pay personal expenses of G. and M. Mowry's children. Shortly thereafter he reviewed the company's QuickBooks records, and he determined that numerous items, including handwritten checks drawn on the company's bank accounts, had not been entered into the accounting records. He also obtained and reviewed online banking statements for the company's bank accounts. He determined that during the years in issue G. Mowry and M. Mowry had been making substantial check and ATM withdrawals from Mowry Rebar's bank accounts without his knowledge.

In the fall of 2012 Mowry Rebar's business began to struggle. Petitioner received calls from Mowry Rebar's vendors who had tried unsuccessfully to contact G. Mowry or M. Mowry regarding payments that they were owed and

[*6] wanted to know when they would be paid. Mowry Rebar had trouble paying its employees, and some company checks were returned. Petitioner had multiple discussions with G. Mowry and M. Mowry about the company's cashflow problems. They told him that they were working on getting more money into the business.

During the fall of 2012 petitioner became frustrated with the progress of Mowry Rebar's business and the discussions that he was having with G. Mowry. On November 19, 2012, petitioner sent G. Mowry an email stating that if G. Mowry would not help him to try to fix the business then petitioner would have no choice but to resign and sell his shares to G. Mowry for $1. G. Mowry responded that he would accept that offer effective immediately.

Petitioner wife received her final paycheck from Mowry Rebar dated November 19, 2012, for the pay period November 12 to 18, 2012. On November 20, 2012, petitioner completed some tasks for ongoing projects and then quit his work for Mowry Rebar. He began working for a new company, a competitor of Mowry Rebar, shortly after Thanksgiving of 2012. He never received payment from G. Mowry for his shares of Mowry Rebar.

[*7] Petitioners' Tax Reporting for Years in Issue

Petitioners filed joint Federal income tax returns for the years in issue. On or around February 21, 2013, petitioners filed their return for 2011. They timely filed their 2012 return, which was signed electronically June 10, 2013.

Petitioners attached Schedules E, Supplemental Income and Loss, Part II, Income or Loss From Partnerships and S Corporations, to their returns for the years in issue. On the Schedules E petitioners listed Mowry Rebar as an S corporation in which they held an interest. They did not report any items of income or loss from Mowry Rebar for the years in issue. For each year the line on Schedule E for reporting Mowry Rebar's income or loss was left blank.

Petitioners also attached to their returns for the years in issue Forms 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), relating to petitioner's interest in Mowry Rebar. On the Forms 8082 petitioners notified respondent that petitioner had not received Schedules K-1 from Mowry Rebar.

Substitutes for Returns for Mowry Rebar and Notice of Deficiency

Mowry Rebar did not file Forms 1120S or issue Schedules K-1 for the years in issue. A revenue agent for respondent conducted an examination and prepared substitutes for returns pursuant to section 6020(b). To determine Mowry Rebar's

[*8] taxable receipts the revenue agent summoned and reviewed the company's banking records and conducted a bank deposits analysis for each year. The revenue agent also reviewed banking records, Mowry Rebar's general ledger, and available employment tax returns to determine the company's allowable deductions

On the substitute for return for each year respondent allowed deductions for employee salaries and wages and other identified business expenses. The revenue agent did not determine any allowable deductions for depreciation expenses. The allowed deductions were subtracted from taxable receipts to determine Mowry Rebar's distributable net income for the years in issue, as shown on the substitutes for returns. The revenue agent allocated the company's distributable net income as ordinary income to petitioner and G. Mowry according to their 49% and 51% ownership shares, respectively.

The revenue agent also analyzed the shareholders' distributions for the years in issue. For 2011 he determined that G. Mowry received distributions of $239,164 and petitioner received distributions of $72,041. For 2012 he determined that G. Mowry received distributions of $496,634 and petitioner received distributions of $52,765. The revenue agent prepared basis computation worksheets for petitioner's shares of Mowry Rebar, and he determined that

**[*9]** petitioner was not required to include the distributions that he received in gross income for the years in issue because the amounts did not exceed his stock basis.

The notice of deficiency issued to petitioners determined increases to their Schedule E flowthrough income for the years in issue reflecting the determinations set forth in the substitutes for returns prepared for Mowry Rebar. Respondent conceded after the commencement of this case that certain deposits included as taxable income in the revenue agent's bank deposits analyses for Mowry Rebar were nontaxable receipts.

OPINION

I.  Burden of Proof

Generally the taxpayer bears the burden of proving that the Commissioner's determinations set forth in the notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In cases of unreported income, the Commissioner bears the initial burden of producing evidence linking the taxpayer with the receipt of funds before the general presumption of correctness attaches to a determination. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985). Once the Commissioner meets this burden of production, the burden of persuasion

[*10] remains with the taxpayer to prove that the Commissioner's deficiency calculations were arbitrary or erroneous.  Id.

Mowry Rebar failed to file income tax returns or to maintain adequate books and records for the years in issue.  Respondent's revenue agent obtained banking records and conducted bank deposits analyses to determine the company's distributable net income.  Bank deposits are prima facie evidence of income, and the bank deposits method has been recognized as an acceptable method of computing unreported income.  DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977).  In computing Mowry Rebar's net income, the revenue agent identified nontaxable deposits and allowed deductions for certain substantiated expenses.  See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (explaining that the Commissioner must take into account any known nontaxable source of income or deductible expense).  Respondent conceded additional nontaxable deposits in the stipulations.  In petitioners' posttrial briefs they do not dispute respondent's computations of Mowry Rebar's taxable deposits for the years in issue.

Respondent has satisfied the burden of production with respect to the unreported income items at issue.  Petitioners contend that the income determined

**[*11]** for petitioner, i.e., 49% of Mowry Rebar's net income for each of the years in issue, should not be attributable to him. They also contend that the revenue agent erred in failing to allow Mowry Rebar additional deductions for depreciation expenses. With respect to these contentions, petitioners bear the burden of proof. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

II.     Petitioner's Interest in Mowry Rebar

Generally an S corporation is not subject to Federal income tax. Sec. 1363(a). Like a partnership, it is a conduit; income flows through it to its shareholders. See Gitlitz v. Commissioner, 531 U.S. 206, 209 (2001). Shareholders of an S corporation are required to report and pay taxes on their pro rata shares of the S corporation's taxable income. Sec. 1366(a)(1)(A); sec. 1.1366-1(a), Income Tax Regs.

A qualifying "small business corporation" must affirmatively elect to be treated as an S corporation for Federal income tax purposes. Secs. 1361(a), 1362(a)(1). Section 1361(b) defines a small business corporation as a domestic corporation which must satisfy a number of requirements, including not having "more than 1 class of stock." See sec. 1361(b)(1)(D). Generally a corporation will be treated as having only one class of stock "if all outstanding shares of stock of the corporation confer identical rights to distribution and liquidation proceeds."

[*12] Sec. 1.1361-1(l)(1), Income Tax Regs. Once an eligible corporation elects S corporation status, that election is effective for the tax year for which it is made and for all succeeding tax years until it is terminated. Sec. 1362(c). Section 1362(d)(2) provides that an election shall be terminated automatically whenever the corporation ceases to qualify as a small business corporation.

The parties do not dispute that when petitioner and G. Mowry organized Mowry Rebar they intended and agreed to create one class of stock. Petitioner testified that he and G. Mowry agreed that all distributions would be proportional to their stock ownership, and tax filings for years before the years in issue reflect that their stock had equal rights to distributions. Mowry Rebar elected to be treated as an S corporation. For years before the years in issue it filed Forms 1120S and issued Schedules K-1 to petitioner reflecting his pro rata shares of the company's taxable income.

Petitioners contend that Mowry Rebar's election to be treated as an S corporation was terminated during the years in issue because it ceased to be a small business corporation. Specifically, they contend that beginning in 2011 Mowry Rebar no longer satisfied the requirement that it have only one class of stock. G. Mowry withdrew large sums of money from Mowry Rebar's bank accounts during the years in issue without petitioner's knowledge, and the revenue

[*13] agent's computations show that G. Mowry and petitioner received distributions for the years in issue that were not proportional to their stock ownership.  Petitioners argue that "these substantially disproportionate distributions appear to create a preference in distributions and * * * effectively a second class of stock.  They contend that Mowry Rebar should be treated as a C corporation and that petitioner should be taxed only on distributions that he received, which they contend should be treated as dividends.

In determining whether a corporation has more than one class of stock we consider the rights granted to shareholders in the corporation's organizational documents and other "binding agreements" between shareholders.  The regulations provide that "[t]he determination of whether all outstanding shares of stock confer identical rights * * * is made based on the corporate charter, articles of incorporation, bylaws, applicable state law, and binding agreements relating to distribution and liquidation proceeds (collectively, the governing provisions)." Sec. 1.1361-1(l)(2)(i), Income Tax Regs.  We held in Minton v. Commissioner, T.C. Memo. 2007-372, aff'd, 562 F.3d 730 (5th Cir. 2009), that evidence of distributions paid to one shareholder and not to others over the course of multiple years was insufficient on its own to establish that a separate class of stock was created.  We concluded that the taxpayer had failed to prove that a binding

[*14] agreement existed that granted the shareholder in question enhanced or disproportionate "rights to distribution and liquidation proceeds", as required by section 1.1361-1(1)(1) and (2)(i), Income Tax Regs. We found that at most there had been "an informal, oral understanding among the board members/ shareholders", and there was no evidence that the directors or shareholders ever took "formal corporate action to implement that understanding." Minton v. Commissioner, slip op. at 13-14.

The original, operative agreement between Mowry Rebar's shareholders was that distribution rights for each of their shares would be identical. Petitioner testified that he and G. Mowry never discussed changing the agreement regarding distributions, and during the years in issue his understanding continued to be that distributions should be proportional to stock ownership. The record reflects that the shareholders in this case never reached, or even considered, a new binding agreement that would change their relative rights to distributions.

Petitioners argue that G. Mowry's withdrawals "effectively changed * * * [the shareholders' agreement] by majority action". However, nothing in the record indicates that G. Mowry intended to act as Mowry Rebar's majority shareholder to grant himself rights to disproportionate distributions. Petitioners offered no evidence of any actions taken at the corporate level to redefine shareholders'

[*15] rights or issue a new class of stock for Mowry Rebar. They have not established that a unilateral change of the kind described (i.e., the creation of a new class of stock) would be allowable under the provisions governing Oregon corporations. See sec. 1.1361-1(l)(2)(i), Income Tax Regs. (providing that the determination as to whether stock confers identical rights to distribution and liquidation proceeds is made, in part, based on "applicable state law").

Petitioners contend that we should regard "the substance of the actions" taken by G. Mowry as creating a second class of stock  The shareholders chose to organize and operate Mowry Rebar with one class of stock, and before the years in issue the company's and the shareholders' tax obligations were determined on the basis that Mowry Rebar had elected to be treated as an S corporation. Petitioners' own tax returns for the years in issue identified Mowry Rebar as an S corporation. Generally taxpayers are bound by the form of the transaction that they choose unless they can provide "strong proof" that the parties intended a different transaction in substance. Schulz v. Commissioner, 294 F.2d 52, 55 (9th Cir. 1961), aff'g 34 T.C. 235 (1960); see also Vandenbosch v. Commissioner, T.C. Memo. 2016-29, at *19-*20. There is no proof that either petitioner or G. Mowry intended an arrangement different from that which they agreed to and reported consistently on their tax filings.

**[\*16]** In short, G. Mowry's withdrawals during the years in issue do not establish that he held a different class of stock with disproportional distribution rights. Petitioners failed to show that there were any changes to Mowry Rebar's governing provisions. See sec. 1.1361-1(l)(2)(i), Income Tax Regs. They have failed to carry their burden of proving that the company's election to be treated as an S corporation terminated during the years in issue under section 1362(d)(2).

Petitioners contend alternatively that on or about November 19, 2012, petitioner sold his stock in Mowry Rebar to G. Mowry, and that no allocation of the company's income should be made to him after that date Petitioner testified about an email exchange in which he stated that he would resign and sell his shares for $1 if G. Mowry did not help him resolve Mowry Rebar's problems. He testified that G. Mowry responded without further discussion that he would accept petitioner's offer. Petitioner performed no work for Mowry Rebar after November 20, 2012.

A sale generally occurs when there is a transfer of property for money or a promise to pay money. Leahy v. Commissioner, 87 T.C. 56, 66 (1986) (citing Commissioner v. Brown, 380 U.S. 563, 570-571 (1965)). Moreover, to be recognized for Federal tax purposes a sale must transfer beneficial ownership, as opposed to bare legal title, of the subject property from the purported seller to the

[*17] purported purchaser. See Ragghianti v. Commissioner, 71 T.C. 346, 349 (1978) ("[R]ecord ownership of stock, standing alone, is not determinative * * * beneficial ownership is the controlling factor."), aff'd, 652 F.2d 65 (9th Cir. 1981). The email exchange that petitioner described in his testimony reflects an informal agreement to sell his shares. However, petitioners provided no evidence that a sale actually occurred in 2012 or that legal or beneficial ownership of the shares was ever transferred to G. Mowry.

Petitioner testified that G. Mowry never paid him for his shares, and petitioners did not report a sale of stock on their 2012 return. For 2012 they continued to list Mowry Rebar as an entity in which they held an interest. That petitioner quit his employment with Mowry Rebar does not necessarily indicate that he ceased to hold his ownership interest in the company.

Petitioners failed to establish that Mowry Rebar was no longer an S corporation for Federal tax purposes or that petitioner disposed of his stock in Mowry Rebar during the years in issue. Because petitioners have failed to carry their burden of proof with respect to these issues, we sustain respondent's determination that petitioner should be allocated 49% of Mowry Rebar's net income for all of each of the years in issue.

**[*18]** III.     <u>Depreciation Deductions</u>

To the extent that petitioner is allocated income from Mowry Rebar, petitioners contend that the revenue agent erred in not allowing deductions for Mowry Rebar for depreciation. Mowry Rebar claimed deductions for depreciation for previous years. The revenue agent testified that he had access to Mowry Rebar's 2009 and 2010 returns and was aware of the depreciation deductions shown on them.

Section 167(a)(1) provides that a reasonable depreciation deduction may be allowed for the "exhaustion, wear and tear" of property used in a trade or business. Petitioners contend that by failing to determine depreciation deductions for the years in issue the revenue agent ignored "the method of accounting regularly employed by the taxpayer." <u>See</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 693 (1989). Regardless of the method of accounting employed, taxpayers are required to substantiate their entitlement to any deductions. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. at 84; <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). With respect to the depreciation deduction, a taxpayer must show that the depreciable property was used in a trade or business and establish its depreciable basis, its useful life or recovery period, and its previously allowable depreciation. <u>See, e.g.</u>, <u>Cluck v. Commissioner</u>, 105 T.C. 324, 337 (1995).

[*19]  When reconstructing Mowry Rebar's net income the revenue agent allowed deductions for business expenses substantiated by the records that he had available; he testified that he was not provided with any direct information regarding depreciation expenses.  At trial and on brief petitioners cited only Mowry Rebar's returns for previous years to support their contention that the company should be entitled to similar deductions for the years in issue.  Petitioners have not described any depreciable property used in the business or provided necessary information about the property for the years in issue that would enable respondent or this Court to determine the amounts of the allowable deductions.  Petitioners themselves have not calculated the deduction amounts to which they contend Mowry Rebar is entitled.

Evidence of a deduction claimed for previous years is insufficient to substantiate the taxpayer's entitlement to the same deduction for years under review.  See Pekar v. Commissioner, 113 T.C. 158, 166 (1999) ("[E]ach taxable year stands on its own and must be separately considered.").  Petitioners failed to provide any evidence of depreciation allowable as deductions for the years in issue.  They have not met their burden of proving that Mowry Rebar is entitled to depreciation deductions.

**[*20]** IV.     Belated Theft Loss Claim

Petitioners contend in their seriatim reply brief that the revenue agent should have allowed Mowry Rebar a theft loss deduction under section 165 "for the distributions/withdrawals * * * [taken by G. Mowry] in excess of what would have been a pro rata distribution amount." Petitioner testified that he told the revenue agent during the examination that G. Mowry had "stolen or embezzled" money from Mowry Rebar. Petitioners did not raise the issue of a theft loss deduction in the petition, at trial, or in their opening brief.

Generally a party may not raise an issue for the first time on brief if our consideration of the issue would surprise and prejudice the opposing party. See Smalley v. Commissioner, 116 T.C. 450, 456 (2001); Seligman v. Commissioner, 84 T.C. 191, 198-199 (1985), aff'd, 796 F.2d 116 (5th Cir. 1986). By raising the theft loss issue in their final seriatim brief petitioners have given respondent no opportunity to respond. Under these circumstances respondent would be prejudiced if we considered the issue. Petitioners' argument that Mowry Rebar is entitled to a theft loss deduction is therefore untimely.

Even if petitioners' new argument were timely, they have not proven that Mowry Rebar suffered a theft loss deductible under section 165 for the years in issue. To qualify for a theft loss deduction, a taxpayer must prove: (1) the

[*21] occurrence of a theft under the law of the jurisdiction in which the claimed loss occurred, Monteleone v. Commissioner, 34 T.C. 688, 692 (1960); (2) the amount of the theft loss, Gerstell v. Commissioner, 46 T.C. 161, 175 (1966); and (3) the date the taxpayer discovered the theft loss, sec. 165(e); McKinley v. Commissioner, 34 T.C. 59, 63 (1960); see also River City Ranches # 1 Ltd. v. Commissioner, T.C. Memo. 2003-150, aff'd in part, rev'd in part, and remanded, 401 F.3d 1136 (9th Cir. 2005). Generally a loss arising from theft is treated as sustained during the year in which the taxpayer discovers it. Sec. 1.165-1(d)(3), Income Tax Regs. However, a theft loss will not be treated as sustained in the year of discovery if there still exists a claim to reimbursement with respect to which there is reasonable prospect of recovery. Id.; see also Vincentini v. Commissioner, T.C. Memo. 2009-255, supplementing T.C. Memo. 2008-271, aff'd, 429 F. App'x 560 (6th Cir. 2011).

Petitioners have not established that G. Mowry's withdrawals constituted theft or the year in which the purported theft loss was sustained for purposes of the deduction. Petitioners did not discuss the elements of theft or any related crime under Oregon State law. See Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), aff'g 61 T.C. 354 (1973). Petitioner testified that he discovered the withdrawals in 2012, but petitioners have not shown that during 2012 there no

[*22] longer remained any reasonable prospect of recovery. We conclude that on the record before us petitioners would be unable to satisfy their burden of proof with respect to the claimed theft loss deduction.

## V.     Late-Filing Addition to Tax

Section 6651(a)(1) imposes an addition to tax for filing a return late. The Commissioner has the burden of production with respect to penalties and additions to tax, sec. 7491(c), which has been met in this case by the stipulation. Once the Commissioner shows that a taxpayer's return was filed late, the taxpayer bears the burden of showing that the failure to file timely was due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioners stipulated that they filed their return late for 2011, and they did not address the late-filing addition to tax at trial or on brief. They offered no evidence or argument that their failure to file timely was due to reasonable cause. We sustain respondent's determination of the addition to tax under section 6651(a).

**[*23]** We have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.